**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO:**

| | |
|---|---|
| **TUNNY SOLOMON, individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | **CLASS ACTION** |
| **v.** | **DEMAND FOR JURY TRIAL** |
| **FLAGSTAR BANK, N.A.,** | |
| **Defendant.** | |

**CLASS ACTION COMPLAINT**

Plaintiff, Tunny Solomon ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action complaint against defendant, Flagstar Bank, N.A, as successor in interest to New York Community Bank ("Defendant"), based on personal knowledge and the investigation of counsel and alleges as follows:

**INTRODUCTION**

1.      This action involves Defendant's unfair and deceptive practice of rolling funds from matured certificates of deposit ("CDs"), into extremely long-term CDs that generate interest at a rate far below what Plaintiff and Class members contracted for, and far lower than what they could have readily obtained in the open market.

2.      This practice as further detailed herein allows Defendant to earn interest and gain other benefits on the funds deposited by Plaintiff and Class members, thereby generating increased profits and other benefits for itself at the direct expense of its customers, and contrary to the terms of the relevant account agreements and applicable law.

3.      Plaintiff and members of the Class have been injured by Defendant's unfair and deceptive CD rollover practices, which are designed to maximize its profits at the expense of its customers. Plaintiff individually, and on behalf of a class of similarly situated individuals as defined below, brings this action against Defendant for its breach of the duty of good faith and fair dealing, breach of contract, unjust enrichment, and further seeks injunctive relief in order to enjoin Defendant from engaging in the unlawful and deceptive practices described here.

**PARTIES**

4.      Plaintiff is a natural person and resident of Miami-Dade County, Florida, and is a citizen of the State of Florida.

5.      Defendant is and was a for profit banking institution which regularly conducts business in the State of Florida.

6.      Plaintiff's relationship with the current and merged and/or acquired Defendant began shortly after the then Amtrust Bank opened one of its first Florida branches in the city of Surfside, Florida, more than twenty-five years ago. Plaintiff opened a checking account offering a very high for the then market promotional five percent interest rate.

7.      On December 5, 2009, Amtrust Bank was acquired by New York Community Bank ("NYCB"), and many of its branches continued to operate under the Amtrust Bank name for at least, and perhaps longer than ten years, after which the said branch underwent a name change to NYCB.

8.      Upon information and belief, at all material times Defendant and its predecessors, utilized the same form and language described in the Plaintiff's CD, more fully described and set forth herein below, system wide in the CDs that it marketed to its customers and the public at large.

2

**JURISDICTION AND VENUE**

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class is a citizen of a state different from the Defendant. The number of members of the proposed Classes in aggregate exceeds 100 accountholders. 28 U.S.C. § 1332(d)(5)(B).

10.     This Court has personal jurisdiction over Defendant because it regularly transacts business within this District and within the State of Florida.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District— where Defendant maintained and maintains bank branches and where Defendant conducted banking business with Plaintiff and Class members.

**FACTUAL ALLEGATIONS**

12.     On or about October 25, 2018, Plaintiff, Tunny Solomon, entered into a Consumer Deposit Account Agreement Defendant (the "CD Agreement") to open a 14-month Consumer Deposit Account, also known as a Certificate of Deposit or "CD" (the "CD Account").

13.     Pursuant to the terms of the CD Agreement, Plaintiff deposited the sum of $50,000 into an account on which interest would accrue at the rate of 2.65% annually, provided Plaintiff maintained the required amount of minimum funds deposited in the account.

14.     At all relevant times, Plaintiff complied with the minimum deposit requirements of the CD Agreement.

15.     Pursuant to the CD Agreement, if the CD Account was not renewed, "[the] deposit will be placed in an interest-bearing maturity savings account."

16.     From October 25, 2018 to December 25, 2019 (the date Plaintiff's CD Account matured), Plaintiff's CD Account accrued interest at the rate of 2.65%, as contractually agreed by the parties in the CD Agreement.

17.     At no point during that period, nor at any other time, did Plaintiff advise, instruct, or direct Defendant as to the disposition of the funds from the matured CD Account.

18.     However, upon the CD Account's maturity after December 25, 2019, despite the terms of the CD Agreement and without any notice to Plaintiff, Defendant failed to place the funds in an interest-bearing maturity savings account, where she would have earned the then extant Savings Account intertest rate which varied from time to time, pursuant to express terms of the CD Agreement.

19.     Instead, in violation of the CD Agreement, Defendant surreptitiously transferred the funds to CD account, bearing the same account number as the original CD Account, with a *de minimis* interest rate, which upon information and belief, was the minimum rate required to qualify the CD account as a CD for entry into Defendant's system. Specifically, Defendant transferred the funds to a CD account that carried a negligible interest rate; from the 2.65 % initially contracted for, to a new interest rate of 0.02%, or 0.0075% of the previous rate.

20.     There is a reason that the Defendant, instead of complying with the terms of the Certificate and Disclosure accompanying the "zombie" (second) CD which the Bank drafted and prepared, it attempted to characterize what should have been characterized and coded as a "savings account", **instead it assigned and utilized the same bank six digit prefix number assigned to Plaintiff's matured CD Account** as opposed to the prefix numbers used to identify a savings account.

21.    12 CFR Sec 1030 Regulation DD (2011 Version) Official Comment 1030.5

"**Subsequent Disclosures**" states:

> 5(c) Notice before maturity *for time accounts longer than one year that do not renew automatically*.
>
> 1. **Subsequent account**. When funds are transferred following maturity of a nonrollover time account, institutions need not provide account disclosures ***unless a new account is established***.
>
> This Official Comment to Rule 5(c) states:
>
> 5. **Renewal of a time account**. In the case of a change in terms that becomes effective if a rollover time account is **subsequently renewed**:
>
> i. **If the change is initiated by the institution, the disclosure requirements of this paragraph apply**. (Paragraph 1030.S(a) applies if the change becomes effective prior to the maturity of the existing time account.)
>
> ***
>
> 6. **Example**. If a consumer receives a prematurity notice on a one-year time account and requests a rollover to a six-month account, **the institution must provide** either **account opening disclosures including the new maturity date** or, if all other terms previously disclosed in the prematurity notice remain the same, **only the new maturity date**."

5(c) Notice before maturity for time accounts longer than one year that do not renew automatically.

1. **Subsequent account**. When funds are transferred following maturity of a nonrollover time account, institutions need not provide account disclosures unless **a new account is established**. Which the Defendant was required to establish and fund.

22.    The terms of the CD Agreement required Defendant to provide Plaintiff with written notice of renewal or maturity prior to the maturity date of the CD Account.

23.    Defendant failed to send Plaintiff this notice as required by the CD Agreement.

24.    As a result of Defendant's failure to comply with the terms of CD Agreement, which required placing the funds in an interest-bearing maturity savings account, Defendant never rendered quarterly statements which were required by the account agreement for interest-bearing maturity savings accounts.  Had Defendant complied with the CD Agreement by transferring the

funds to an interest-bearing maturity savings account, Defendant would have been obligated to send, and Plaintiff would have received, the required quarterly statements, thus apprising her of the non-renewal of the CD, and the transfer of the funds therein to an exceedingly long-term, unprecedented negligible interest CD account.

25.     Defendant was obligated to render quarterly Statements to Plaintiff, the first of these commencing immediately following the quarter ending December 31, 2019, that is, Defendant was required to send the Plaintiff a Statement of Account the first week of January, 2020, indicating an opening balance of $51,552.50 which were the proceeds from her matured CD Account.

26.     In addition, although Defendant was allowed to change the interest rate, it was contractually required to send notice of its intent to do so:

> The Bank may also change the interest rates, the minimum Account Balance requirements, the service and maintenance charges and the banking hours from time to time. Each of the changes will be binding on you and your Account when we post a notice in the Bank or when we mail you written notice to your last known address of the change, if required by law and in the manner prescribed by law. Copies of revised policies will also be available at all our branches.

27.     Almost _three and one half years_ after Defendant's unauthorized transfer of the funds from the CD Account, on May 23, 2023, Plaintiff was presented for the first time with a document purporting to be a Certificate of Deposit, with a purported date of December 19, 2019. The CD was funded or purchased with the funds from the matured CD Agreement.

28.     This undisclosed and "zombie" CD account purported to have a maturity date of **300 months, or December 25, 2044**. Thus, according to its terms, _no statements were required to be periodically rendered_, nor were any statements of account rendered nor sent to the Plaintiff. Accounting to the CD's terms, Defendant was required to notify the Plaintiff of the maturity of the zombie CD during the month of **November, 2044, or approximately nine years after her projected life span**.

29.     Contemporaneously with being provided the belated and unauthorized CD by Defendant's representative, Plaintiff was also provided with a printout purporting to be the account history for that CD account. The account history shows that the **interest rate for the CD was 0.02%,** and appears to show **both interest compounded and credited on a <u>quarterly basis</u>, at 0.02%**.

30.     The Post Maturity Savings Account which was supposed to be opened and funded is further described on the last page of the Plaintiffs original CD Certificate titled "Truth in Savings Account Disclosures Post Maturity." The disclosures continue by stating that the "[r]equirements to open . . . this account . . . Will be used to receive funds from matured certificate of deposits . . . that did not contain an automatic renewal option."

31.     The "Compounding and Crediting" section of this purported Certificate provided that for a Term of Deposit "12 months or more . . . Interest is compounded on a daily basis. Interest is credited to your account on a monthly basis . . . ."

32.     The "Truth in Savings-Account Disclosures Post Maturity" continues by stating that: "Interest is both compounded and credited either monthly or quarterly depending on the compounding and crediting of the original certificate of deposit."

33.     Defendant transferred Plaintiff's funds from her CD Account into the aforementioned zombie CD **without any notice**.

34.     As a result of Defendant's duplicitous business practices, Plaintiff was deprived of the interest she would have earned on the funds the bank surreptitiously and without authorization, rolled into a new zombie, neglible interest CD rather than an interest-bearing maturity savings account, for a period spanning 25 years, resulting in losses to Plaintiff in an amount exceeding thousands of dollars while further depriving her of any additional use of the funds from which she could have potentially benefited.

35.     Upon information and belief this unfair and deceptive practice was not limited to Plaintiff's CD Account, but rather, is a bank-wide practice employed at all of the Defendant's prior acquired and existing branches, located throughout the United States.

36.     Defendant knowingly and in violation of the CD Agreement, rolled and rolls customer funds from matured CDs, into exceedingly long-term *de minimis* interest CD accounts, rather than the interest-bearing maturity savings accounts the CD Agreement requires, which earn interest at a significantly higher rate than the CDs Defendant rolls funds into, and which in turn provides notice by quarterly account statements to those CD account holders and customers of Defendant whose CDs matured.

37.     Upon information and belief, Defendant engages in this practice to increase its own profits at the expense of its customers, because by transferring its customers' funds into the long-term, minimal interest bearing accounts, it necessarily pays out far less money to its customers including Plaintiff and Class members, while earning for itself, interest and other revenue, and additional collateral benefits from the customer funds it holds.

38.     The interest rates of the CDs Defendant unilaterally and in violation of the CD Agreements rolled and rolls customer funds into are well below what Plaintiff and Class members could easily obtain in other investment vehicles, and well below that of their initial investment with Defendant, as well as below what they were entitled to under the CD agreement.

39.     Defendant deliberately avoids and avoided apprising its customers like Plaintiff and Class members that it will be transferring and do in fact transfer their funds to investment vehicles that will earn interest at a rate well below what they could reasonably earn in the open market, and below what is required under their account agreements with said customers.

40.     Plaintiff would not have invested her funds with Defendant had she known what Defendant intended to do, or that it would not transfer and maintain her funds in accordance with the terms of the CD Agreement.

41.     On information and belief, a reasonable consumer would not have invested their funds with Defendant had they known what Defendant intended to do, or that it would not transfer and maintain their funds in accordance with the terms of the CD Agreement.

42.     As a result of Defendant's unfair and deceptive business practices as alleged herein, Plaintiff and members of the Class have been damaged in an amount of the difference between what they actually earned in interest and what they would have earned had Defendant complied with the terms of the account agreement or otherwise held the subject funds in a commercially reasonable manner.

## CLASS ALLEGATIONS

43.     Plaintiff brings this case as a class action on behalf of herself and all other persons similarly situated, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3). The proposed Class is defined as follows:

> All natural persons in the United States who purchased a certificate of deposit from Defendant, the funds of which were transferred upon maturity to another certificate of deposit without authorization from the account holder, in the four years preceding the filing of the Complaint, through the date of any order granting certification of the class.

44.     Expressly excluded from the Class are:

    (a)     Any Judge or Magistrate Judge presiding over this action and members of their immediate families;

    (b)     Defendant and any entity in which Defendant has a controlling interest, or which has a controlling interest in Defendant and its legal representatives,

assigns and successors; and

(c)     All persons who properly execute and file a timely request for exclusion
        from the Class.

45.     Plaintiff reserves the right to amend the Class definition at the Class Certification stage of the litigation if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

**Fed. R. Civ. P. 23(a) Criteria**

46.     <u>Numerosity</u>. The exact number of Class members is unknown as such information is in the exclusive control of Defendant. However, due to the nature of the trade and commerce involved, and the size of Defendant's business, Plaintiff believes the Class consists of thousands of consumers, geographically dispersed throughout the United States, making joinder of all Class members impracticable.  Class members are ascertainable from a review of Defendant's business records.

47.     <u>Commonality</u>.  Common questions of law and fact affect the rights of each Class member and common relief by way of damages is sought for Plaintiff and Class members. The harm that Defendant has caused or could cause is substantially uniform with respect to Class members. Common questions of law and fact that affect the Class members include, but are not limited to:

(a)     Whether Defendant breached their contract with Plaintiff and Class
        members;

(b)     Whether Defendant has been unjustly enriched at the expense of Plaintiff
        and Class members thought its practice of rolling funds from matured CDs
        into long-term, *de minimis* interest CDs;

(c)     Whether Defendant breached the implied covenant of good faith and fair dealing to Plaintiff and Class members thought its matured CD rollover practices;

(d)     Whether Defendant should be enjoined from its practice of rolling funds from matured CDs into long-term, low interest CDs;

(e)     Whether Plaintiff and the members of the Class have sustained damages as a result of Defendant's conduct, and if so, the proper measure of such damages.

48.     <u>Typicality</u>. The claims and defenses of Plaintiff are typical of the claims and defenses of the Class because they all had the funds of their matured CDs rolled into new long-term, *de minimis* interest CDs. There is nothing peculiar about Plaintiff's claims. Indeed, Plaintiff's claims are typical of the claims of other members of the Class. Plaintiff resides in this jurisdiction and will likely be required to use or will encounter Defendant's banking branches in the future. She is uncertain of her rights and obligations regarding Defendant's banking practices.

49.     <u>Adequacy of Representation</u>. Plaintiff will fairly and adequately assert and protect the interests of the Class.  First, Plaintiff has hired attorneys who are experienced in prosecuting class action claims across the United States, and who will adequately represent the interests of the Class.  Second, Plaintiff has no conflict of interest that will interfere with the maintenance of this class action as her claims are the same as the Class members she seeks to represent. Further, Plaintiff understands her obligations to the Class, is committed to vigorously litigating this matter, and will fairly and adequately protect and represent the interests of the Class.

**Rule 23 (b)(2) Criteria**

50.     This action is appropriate for class action status because the prosecution of separate actions by or against individual members of the Class would be unduly burdensome and create risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendant.

51.     This action is appropriate for class action status because Defendant has acted in a pattern of the same unlawful conduct to all members of the Class, on grounds generally applicable to all Class members, thereby making final declaratory or injunctive relief concerning the Class as a whole appropriate.

52.     Defendant's actions and methods in obtaining, using and transferring Plaintiff's and Class members' funds breached their contracts with Plaintiff and Class members, violates the law, and generally affects Plaintiffs and the Class members in the same way.

53.     The continued violation of Plaintiff's and the Class members' legal and contractual rights results in irreparable harm for which there is no adequate remedy at law.

**Rule 23 (b)(3) Criteria**

54.     The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members. A class action provides a fair and efficient method for the adjudication of this controversy for these reasons and is superior to the alternative methods involved in individual litigation.

55.     Although the Class is numerous enough to meet the numerosity requirement, the proposed Class does not create manageability problems because the claims turn on common legal determinations.  Either Defendant's actions are in violation of Plaintiff's and Class Members' legal or contractual rights, or they are not.  There are no unusual legal or factual issues that would create

manageability problems as the issues turn on the propriety of Defendant's transfer of Plaintiff's can Class members' funds upon maturation of CDs they purchased from Defendant.

56.     Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct.

57.     Despite the sizeable sum of money unlawfully retained by Defendant, the claims of the individual Class members are, nevertheless, small in relation to the expenses of individual litigation, making a class action the only procedural method of redress in which Class members can, as a practical matter, recover their damages and stop the illegal practices at issue.

58.     Class members are readily identifiable and ascertainable given the nature of Defendant's business practices.

**CAUSES OF ACTION**

**COUNT I**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

59.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1-58 as if fully set forth herein.

60.     Under Florida law there is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.

61.     Plaintiff and Defendant entered into a contract when Plaintiff invested in then CD Account, as evidenced by the CD Agreement, which set forth the terms of the parties' relationship.

62.     Under the express and implied terms of the CD Agreements entered into between Defendant and Plaintiff and Class members, Plaintiff and Class members were to benefit by virtue

of set rates of interests on funds deposited with Defendant, while Defendant would benefit from holding and maintaining the funds deposited by Plaintiff and Class members.

63.     Plaintiff performed all obligations required of her under the CD Agreement, by funding the CD Account, and complying with all terms thereunder.

64.     Defendant exhibited bad faith by failing to comply with the terms of the CD Agreement and by rolling over Plaintiff's and Class member funds into accounts/investments that earned interest at negligible rate of, a small fraction what they were contractually entitled to, and that earned Defendant greater profits than it would have earned had it complied with the CD Agreement and paid Plaintiff and Class members the interest they would have earned had it complied.

65.     By rolling Plaintiff's and Class members' funds into zombie CDs earning a mere fraction of the interest than they expected, bargained for, and could have earned in the open market in order to increase profits for itself, Defendant breached the implied covenant of good faith and fair dealing with respect to both the specific contractual terms in the CD Agreement, and the implied warranties of their contractual relationships with their customers, including Plaintiff and Class members.

66.     By failing to place the funds into an interest-bearing maturity savings account which required periodic statements upon maturity of the CD Account, Defendant unfairly interfered with Plaintiff's right to receive the benefits of the contract.

67.     All conditions precedent to Defendant's performance under the terms of the CD Agreement have occurred.

68.     Plaintiff and Class members were harmed by Defendant's breach of the implied covenant of good faith and fair dealing, in that they earned less money from their investment than they otherwise would have had Defendant not unfairly interfered with their interests.

## COUNT II
**Breach of Contract**

69.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1-58 as if fully set forth herein.

70.     In purchasing a CD from Defendant, Plaintiff and class members entered into a contract with Defendant, the terms of which were set forth in the CD Agreement.

71.     The CD Agreement required that Defendant transfer any matured funds from the CD Account to an interest-bearing maturity savings account which would earn interest at a rate rate greater than the aforementioned zombie CD, or in the alternative, would have provided additional and or initial notice via periodic statements, that the Plaintiff and Class members' previous CDs had matured and that the terms of the Savings account would allowed them immediate access to their funds to invest them more profitably.

72.     Defendant breached the contract in that it failed to transfer or roll over funds as required by the CD Agreement, thus resulting in Plaintiff and Class members earning interest on their money at a rate below that which they were entitled to under the contract.

73.     Defendant's failure to transfer the money as required by the CD Agreement was the direct and legal cause of Plaintiff's and Class members' injuries and damages.

74.     Plaintiff and Class members were harmed by Defendant's breach of contract in that they earned less money in interest than they were entitled to under the contract as a result of Defendant's failure to transfer rolled over funds as required by the contract.

## COUNT III
**Unjust Enrichment**
***(pled in the alternative to Counts I-II)***

75.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1-58 as if fully set forth herein.

76.     Plaintiff and Class Members had both an equitable and legal interest in the funds rolled over from their CD Accounts.

77.     Defendant received a financial benefit when it transferred to, and held Plaintiff's and Class members' funds in, a long-term, exceedingly long-term, negligible interest CDs rather than an interest-bearing maturity savings account as required by the CD Agreement.

78.     Upon information and belief, this financial benefit was conferred when Defendant paid less in interest payments to Plaintiff and Class members than they would have been entitled to had Defendant complied with the terms of the CD Agreements.

79.     Defendant accepted or had knowledge of the benefit conferred on it by its customers who entrusted Defendant with their money and earned less on that money than they were contractually entitled to.

80.     Defendant understood and appreciated that the value and purpose of Plaintiff's and Class members' investments in the CDs was earning interest at specific rates and that value depended on actually earning interest at the rates specified and contractually agreed to.

81.     Defendant acquired Plaintiff's and the Class Members money through inequitable means in that it accepted the money under the false premise that it would earn interest at a specified rate, and then after the initial term, if the initial investment was not renewed nor cashed out, would be place in a savings account with notice and periodic statements, but then failed to honor its obligations under the CD Agreements without Plaintiffs' and Class members' knowledge or notice, and to their detriment.

82.     As a result of Defendant's Conduct, Defendant has been unjustly enriched in an amount equal to the profits Defendant realized from rolling funds from the matured CD Accounts

into long-term, *de minimis* interest CDs, rather than interest-bearing maturity savings accounts as was required under the CD Agreements.

83.     Defendant should not be permitted to retain the payments which include profits realized by Defendant from the unauthorized use of Plaintiff's and Class members' funds which should have been transferred to interest-bearing maturity savings accounts pursuant to the CD Agreements.

84.     Defendant unjustly enriched itself by using money belonging to Plaintiff and Class members to further its business interests and generate profits for itself at the expense of Plaintiff and Class Members.

85.     Because Defendant chose to utilize Plaintiff's and the Class members' money to generate profits for itself, rather than generate interest for Plaintiff and the Class members as was required by the CD Agreements, any such profits earned by Defendant should be disgorged.

86.     Under principles of equity and good conscience, Defendant should not be permitted to retain the money wrongfully earned, and should be compelled to provide for the benefit of Plaintiff and the Class members, all unlawful or unjust proceeds received by it as a result of the conduct alleged herein.

## COUNT IV
### Injunctive Relief

87.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1-58 as if fully set forth herein.

88.     Plaintiff and members of the Class have no adequate remedy at law.

89.     The members of the Class will suffer greater injury if an injunction is not granted than Defendants will incur if the injunction is granted.

90.     The public interest will be served by an injunction against Defendants by the enforcement of the requirements of the contract.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests the Court enter judgment in her favor and in favor of the Class, and against Defendant for:

(a)     an order certifying this case to proceed as a class action, designating Plaintiff as the Class representative, and designating his undersigned lawyers as Class Counsel;

(b)     a declaration of the Plaintiff's and Class members' rights and obligations with regard to Defendant's CD maturity rollover practices;

(c)     actual damages in an amount according to proof;

(d)     disgorgement of any profits unjustly obtained though the conduct alleged herein;

(e)     an order permanently enjoining Defendant from further engaging in the conduct alleged herein;

(f)     reasonable attorneys' fees and costs; and

(g)     such further relief as this Court may deem appropriate.

## **Jury Demand**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: November 13, 2024

Respectfully submitted,

*/s/ Seth M. Lehrman*
Seth M. Lehrman (FBN: 132896)
**LEHRMAN LAW**
6501 Park of Commerce Blvd., Suite 253
Boca Raton, FL 33487
Telephone: 754-778-9660
seth@lehrmanlaw.com

Scott D. Owens (FBN: 597651)
SCOTT D. OWENS P.A.
2750 N. 29th Ave., Suite 209A
Hollywood, FL 33020
Telephone: 954-589-0588
scott@scottdowens.com

*Attorneys for Plaintiff and the proposed class*