**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**TUNNY SOLOMON,** individually and on behalf
of all others similarly situated,

          Plaintiff,

v.

**FLAGSTAR BANK, N.A.,**

          Defendant.

**Case No: 1:24-cv-24482-RKA**

**CLASS ACTION**
**DEMAND FOR JURY TRIAL**

---

### CLASS ACTION SECOND AMENDED COMPLAINT

Plaintiff, Tunny Solomon ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action complaint against defendant, Flagstar Bank, N.A, as successor in interest to New York Community Bank ("Defendant"), based on personal knowledge and the investigation of counsel and alleges as follows:

### INTRODUCTION

1.      This action involves Defendant's unfair and deceptive practice of rolling funds from matured certificates of deposit ("CDs") into accounts with a *de minimis* and unreasonably low interest rate of 0.02% - which generate interest at a rate far below what the contract required.[1] Defendant breached the terms of the contract with Plaintiff and Class members and breached the covenant of good faith and fair dealing. Defendant deprived Plaintiff and Class Members of the higher interest required by contract, available through other accounts from Defendant and available on the open market.

---

[1] References to any subsequent or second CD account referred to as a "zombie" CD or describing same have been replaced amended to an account with account with a *de minimis* and unreasonably low interest rate of 0.02%.

2.     This practice as further detailed herein allows Defendant to earn interest and gain other benefits on the funds deposited by Plaintiff and Class members, thereby generating increased profits and other benefits for itself at the direct expense of its customers, and contrary to the terms of the relevant account agreements and applicable law.

3.     Defendant is one of the largest regional banks in the country.[2] As of December 31, 2024, Defendant had $100.2 billion of assets, $69.2 billion of loans, deposits of $75.9 billion, and total stockholders' equity of $8.2 billion.[3]

4.     In 2019, Defendant operated 238 branches through eight local divisions, each with a history of service and strength: Queens County Savings Bank, Roslyn Savings Bank, Richmond County Savings Bank, Roosevelt Savings Bank, and Atlantic Bank in New York; Garden State Community Bank in New Jersey; Ohio Savings Bank in Ohio; and AmTrust Bank in Arizona and Florida.[4]

5.     At the end of the year 2019, Defendant reported an average balance of 13,532,036 thousand dollars in Certificate of deposits.[5] By the end of the fourth quarter in 2019, 45% of Defendant's deposits consisted of certificates of deposits.[6]

6.     By the end of 2019, Defendant reported $14.2 billion of CDs maturing over the following four quarters with WAR of 2.25%.[7] At that time, Defendant pointed out the importance

---

[2] Source: https://ir.flagstar.com/about-us/company-profile/default.aspx (last visited: April 10, 2025)

[3] *Id.*

[4] *Id.* at p. 81.

[5] NEW YORK COMMUNITY BANCORP, INC. Form 10-K For the fiscal year ended: December 31, 2019 at p. 67 https://s203.q4cdn.com/110803960/files/doc_financials/2019/q4/NYCB-FINAL-10-K-For-Interactive-Format.pdf (last visited April 10, 2025).

[6] NEW YORK COMMUNITY BANCORP, INC. Fourth Quarter 2019 Investor Presentation at p. 17 https://s203.q4cdn.com/110803960/files/4Q-2019-Investor-Presentation.pdf (last visited: April 10, 2025).

[7] *Id.* at p. 18.

of managing deposit costs lower and proactively reducing higher cost deposit relationships for its future earnings growth.[8]

7.      Plaintiff and members of the Class have been injured by Defendant's unfair and deceptive post-maturity practices, which are designed to maximize its profits at the expense of its customers. Plaintiff individually, and on behalf of a class of similarly situated individuals as defined below, brings this action against Defendant for its breach of the duty of good faith and fair dealing and breach of contract.

## PARTIES

8.      Plaintiff is a natural person and resident of Miami-Dade County, Florida, and is a citizen of the State of Florida.

9.      Defendant is and was a for profit banking institution which regularly conducts business in the State of Florida.

10.      Plaintiff's relationship with the current and merged and/or acquired Defendant began shortly after the then Amtrust Bank opened one of its first Florida branches in the city of Surfside, Florida, more than twenty-five years ago. Plaintiff opened a checking account offering a very high for the then market promotional five percent interest rate.

11.      On December 5, 2009, Amtrust Bank was acquired by New York Community Bank ("NYCB"), and many of its branches continued to operate under the Amtrust Bank name for at least, and perhaps longer than ten years, after which the said branch underwent a name change to NYCB.

12.      Upon information and belief, at all material times Defendant and its predecessors, utilized the same form and language described in the agreement with Plaintiff, more fully described

---

[8] *Id.*

and set forth herein below, system wide in the CDs that it marketed to its customers and the public at large.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the class is a citizen of a state different from the Defendant. The number of members of the proposed Classes in aggregate exceeds 100 accountholders. 28 U.S.C. § 1332(d)(5)(B).

14. This Court has personal jurisdiction over Defendant because it regularly transacts business within this District and within the State of Florida.

15. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District— where Defendant maintained and maintains bank branches and where Defendant conducted banking business with Plaintiff and Class members.

## FACTUAL ALLEGATIONS

16. On or about October 25, 2018, Plaintiff, Tunny Solomon, entered into a Consumer Deposit Account Agreement Defendant ("CD Agreement") to open a 14-month Consumer Deposit Account, also known as a Certificate of Deposit or "CD" ("CD Account").  A copy of the CD's Truth in Savings Account Disclosure, which is attached hereto as Exhibit A.

17. Pursuant to the terms of the CD Agreement, Plaintiff deposited the sum of $50,000 into an account on which interest would accrue at the rate of 2.65% annually, provided Plaintiff maintained the required amount of minimum funds deposited in the account. Exhibit A.

18.     At all relevant times, Plaintiff complied with the minimum deposit requirements of the CD Agreement.

19.     Pursuant to the CD Agreement, the account should not have renewed automatically unless otherwise noted on the front of the certificate. Exhibit A at p. 3.

20.     The CD Agreement further provides, "[i]f you do not renew the certificate your deposit will be placed in an interest-bearing Post-Maturity savings account." *Id.* at p. 3.

21.     From October 25, 2018 to December 25, 2019 (the date Plaintiff's CD Account matured), Plaintiff's CD Account accrued interest at the rate of 2.65%, as contractually agreed by the parties in the CD Agreement.

22.     At no point during that period, nor at any other time, did Plaintiff advise, instruct, or direct Defendant as to the disposition of the funds from the matured CD Account.

23.     However, upon the CD Account's maturity after, on December 25, 2019, despite the terms of the CD Agreement and without any notice to Plaintiff, Defendant place the funds in an account that had a *de minimis* and unreasonably low interest rate of 0.02%.

24.     Instead, in violation of the CD Agreement, Defendant surreptitiously transferred the funds to an account with a *de minimis* and unreasonably low interest rate of 0.02%. Specifically, Defendant transferred the funds to an account with a *de minimis* and unreasonably low interest rate of 0.02% that carried a negligible interest rate; from the 2.65 % initially contracted for, to a new interest rate of 0.02%, or 0.0075% of the previous rate.

25.     Defendant's average interest rate on savings accounts and other Consumer Deposit Accounts that were available at the time Plaintiff's CD matured, was substantially higher than the *de minimis* and unreasonably low interest rate of 0.02% applied to the account where Plaintiff's funds were arbitrarily transferred in breach of the CD Agreement.

26.     Because of Defendant's breach, Plaintiff incurred pecuniary loss in the amount of at least the difference between Defendant's average savings accounts and available Consumer Deposit Accounts interest rate at the time Plaintiff's CD account matured and the *de minimis* and unreasonably low interest rate of 0.02% that was applied instead.

27.     There is a reason that the Defendant, instead of complying with the terms of the CD Agreement and Disclosure accompanying the *de minimis* and unreasonably low 0.02% interest rate account which the Bank drafted and prepared, it attempted to characterize what should have been characterized and coded as a "savings account" or "new account," and **instead it assigned and utilized the same bank six digit prefix number assigned to Plaintiff's matured CD Account** as opposed to the prefix numbers used to identify a savings account.

28.     Defendant's conduct and its failure to provide the required disclosures for new accounts and the subsequent disclosures due blatantly violates the Truth in Savings Act, 12 U.S.C. 4301, *et seq*., and the related regulations.

29.     First, 12 C.F.R. § 1030.3 requires banks to provide the disclosures required by §§ 1030.4 through 1030.6 ***clearly and conspicuously, in writing, and in a form the consumer may keep***. 12 C.F.R. § 1030.3.

30.     Second, 12 C.F.R. § 1030.4 specifies the required disclosures when a new account is opened and provides as follows:

> (a) Delivery of account disclosures—
> (1) Account opening—
> (i) General. A depository institution shall provide account disclosures to a consumer before an account is opened or a service is provided, whichever is earlier. An institution is deemed to have provided a service when a fee required to be disclosed is assessed. Except as provided in paragraph (a)(1)(ii) of this section, if the consumer is not present at the institution when the account is opened or the service is provided and has not already received the disclosures, the institution shall mail or deliver the disclosures no later than 10 business days after the account is opened or the service is provided, whichever is earlier.

(ii) Timing of electronic disclosures. If a consumer who is not present at the institution uses electronic means (for example, an Internet Web site) to open an account or request a service, the disclosures required under paragraph (a)(1) of this section must be provided before the account is opened or the service is provided.

12 C.F.R. § 1030.4

31.     Third, and most importantly, 12 C.F.R. § 1030.5 requires banks to give ***advance notice to affected consumers of any change in a term required to be disclosed under § 1030.4(b) of this part if the change may reduce the annual percentage yield or adversely affect the consumer***. 12 C.F.R. § 1030.5.

32.     Further, 12 C.F.R. § 1030.5(c) specifies the required notice "before maturity for time accounts longer than one year that do not renew automatically" and states "[f]or time accounts with a maturity ***longer than one year that do not renew automatically at maturity***, institutions shall disclose to consumers the maturity date and ***whether interest will be paid after maturity***. The disclosures shall be mailed or delivered at least 10 calendar days before maturity of the existing account." 12 C.F.R. § 1030.5 (emphasis added).

33.     Pursuant to these regulations, Defendant would have been required to provide account disclosures had it deposited Plaintiff's funds into a new saving account. By rolling Plaintiff's funds over to an account with a *de minimis* and unreasonably low interest rate of 0.02% and maintaining the same account number, Defendant has de facto eluded the above referenced regulations, while breaching the terms of the CD Agreement.

34.     Defendant's conduct violates the language and the purpose of TISA. *See* 12 U.S. Code § 4301 ("The Congress hereby finds that economic stability would be enhanced, competition between depository institutions would be improved, and the ***ability of the consumer to make informed decisions regarding deposit accounts, and to verify accounts, would be strengthened***

***if there was uniformity in the disclosure of terms and conditions on which interest is paid and fees are assessed in connection with such accounts***.") (emphasis added).

35.     Defendant violated the requirements of the Truth in Savings Act and its enacting regulations, and in doing so it was unjustly enriched at the expense of Plaintiff and the class members.

36.     Defendant failed to send Plaintiff notice as required by the CD Agreement that and that it had transferred Plaintiff's post-maturity monies in an account with a *de minimis* and unreasonably low interest rate of 0.02%. As a result of Defendant's failure to comply with the terms of CD Agreement, which required placing the funds in an interest-bearing maturity savings account, Defendant never rendered quarterly statements which were required by the account agreement for interest-bearing maturity savings accounts.  *See* Exhibit B at p. 11 ("If you have a statement type Account, either checking or savings (including Money Market Deposit Accounts), the Bank will mail you a periodic statement, which will contain a record of all transactions during that period. If you have a statement account, you will receive a monthly statement only when a customer initiated transaction or Electronic Funds Transfer occurs; otherwise you will receive a quarterly statement.").

37.     Had Defendant complied with the CD Agreement by transferring the funds to an interest-bearing maturity savings account, Defendant would have been obligated to send, and Plaintiff would have received, the required quarterly statements, thus apprising her of the non-renewal of the CD, and the transfer of the funds therein to an account with a *de minimis* and unreasonably low interest rate of 0.02%.

38.     Defendant was obligated to render quarterly Statements to Plaintiff, the first of these commencing immediately following the quarter ending December 31, 2019, that is,

Defendant was required to send the Plaintiff a Statement of Account the first week of January, 2020, indicating an opening balance of $51,552.50 which were the proceeds from her matured CD Account.

39.     Almost *three and one half years* after Defendant's unauthorized transfer of the funds from the CD Account, on May 23, 2023, Plaintiff was presented for the first time with a document purporting to be a Certificate of Deposit, with a purported date of December 19, 2019. The CD was funded or purchased with the funds from the matured CD Agreement.

40.     On May 23, 2023, Defendant provided Plaintiff with a printout purporting to be the account history for that CD account. The account history shows that the **interest rate was 0.02%,** and appears to show **both interest compounded and credited on a quarterly basis, at 0.02%**.

41.     The Post Maturity Savings Account which was supposed to be opened and funded is further described on the last page of the Plaintiffs original CD Certificate titled "Truth in Savings Account Disclosures Post Maturity." The disclosures continue by stating that the "[i]f you do not renew the certificate, your deposit will be placed in an interest-bearing Post-Maturity savings account."

42.     The "Compounding and Crediting" section of this purported Certificate provided that for a Term of Deposit "12 months or more . . . Interest is compounded on a daily basis. Interest is credited to your account on a monthly basis." Exhibit A at p. 1.

43.     Defendant transferred Plaintiff's funds from her CD Account into an account with a *de minimis* and unreasonable interest rate of 0.02% **without any notice to Plaintiff**.

44.     Plaintiff did not receive written notice from Defendant that her funds were being transferred into an account with a *de minimis* and unreasonable interest rate of 0.02%.

45.     Plaintiff did not receive oral notice—either in person or telephonically—that her funds were being transferred into an account with a *de minimis* and unreasonable interest rate of 0.02%.

46.     As a result of Defendant's duplicitous business practices, Plaintiff was deprived of the interest she would have earned on the funds the bank surreptitiously and without authorization, rolled into an account with a *de minimis* and unreasonable interest rate of 0.02%, resulting in losses to Plaintiff in an amount exceeding thousands of dollars while further depriving her of any additional use of the funds from which she could have potentially benefited.

47.     Despite the terms of the CD Agreement, Defendant breached this agreement by failing to provide quarterly statements of the account with a *de minimis* and unreasonable interest rate of 0.02%, which would have periodically reminded Plaintiff and the Class members about their account, and allowed them to seek higher—possibly promotional—rates.

48.     By opening a new account pursuant to the CD Agreement, Defendant would have also been required to provide a copy of the account disclosures for the newly created account, pursuant to 12 C.F.R. § 1030.3; § 1030.4; § 1030.5.

49.     Defendant also failed to provide Plaintiff with disclosures related to the account with a *de minimis* and unreasonable interest rate of 0.02% in which it rolled Plaintiff's funds.

50.     Upon information and belief, at the time Plaintiff's CD Account matured, Defendant had regular CD interest rates higher than the interest rate applied to the account with a *de minimis* and unreasonable interest rate of 0.02%.

51.     Upon information and belief, at the time Plaintiff's CD Account matured, Defendant had promotional CD interest rates higher than the interest rate applied to the account with a *de minimis* and unreasonable interest rate of 0.02%.

52.     Upon information and belief this unfair and deceptive practice was not limited to Plaintiff's CD Account, but rather, is a bank-wide practice employed at all of the Defendant's prior acquired and existing branches, located throughout the United States.

53.     Defendant knowingly and in violation of the CD Agreement, rolled and rolls customer funds from matured CDs, into an account with a *de minimis* and unreasonable interest rate of 0.02%, rather than the interest-bearing maturity savings accounts the CD Agreement requires, which earn interest at a significantly higher rate than the account with a *de minimis* and unreasonable interest rate of 0.02% Defendant rolls funds into, and which in turn provides notice by quarterly account statements to those CD account holders and customers of Defendant whose CDs matured.

54.     Upon information and belief, Defendant engages in this practice to increase its own profits at the expense of its customers, because by transferring its customers' funds into the minimal interest bearing accounts, it necessarily pays out far less money to its customers including Plaintiff and Class members, while earning for itself, interest and other revenue, and additional collateral benefits from the customer funds it holds.

55.     The interest rates of the accounts with a *de minimis* and unreasonable interest rate of 0.02% are well below what Plaintiff and Class members could easily obtain in other investment vehicles, and well below that of their initial investment with Defendant, as well as below what they were entitled to under the agreement.

56.     Defendant deliberately avoids and avoided apprising its customers like Plaintiff and Class members that it will be transferring and do in fact transfer their funds to investment vehicles that will earn interest at a rate well below what they could reasonably earn in the open market, and below what is required under their account agreements with said customers.

57. Plaintiff would not have invested her funds with Defendant had she known what Defendant intended to do, or that it would not transfer and maintain her funds in accordance with the terms of the agreement.

58. On information and belief, a reasonable consumer would not have invested their funds with Defendant had they known what Defendant intended to do, or that it would not transfer and maintain their funds in accordance with the terms of the CD Agreement.

59. As a result of Defendant's unfair and deceptive business practices as alleged herein, Plaintiff and members of the Class have been damaged in an amount of the difference between what they actually earned in interest and what they would have earned had Defendant complied with the terms of the account agreement or otherwise held the subject funds in a commercially reasonable manner.

## CLASS ALLEGATIONS

60. Plaintiff brings this case as a class action on behalf of herself and all other persons similarly situated, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3). The proposed Class is defined as follows:

> All natural persons in the United States (a) who purchased a certificate of deposit from Defendant, (b) whose certificate of deposit matured after November 13, 2019, and (c) whose funds were then paid interest by Defendant at the annual rate of 0.02% after Defendant did not send the first account statement.

61. Expressly excluded from the Class are:

(a) Any Judge or Magistrate Judge presiding over this action and members of their immediate families;

(b) Defendant and any entity in which Defendant has a controlling interest, or which has a controlling interest in Defendant and its legal representatives,

assigns and successors; and

(c)     All persons who properly execute and file a timely request for exclusion from the Class.

62.     Plaintiff reserves the right to amend the Class definition at the Class Certification stage of the litigation if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

## Fed. R. Civ. P. 23(a) Criteria

63.     Numerosity. The exact number of Class members is unknown as such information is in the exclusive control of Defendant. However, due to the nature of the trade and commerce involved, and the size of Defendant's business, Plaintiff believes the Class consists of thousands of consumers, geographically dispersed throughout the United States, making joinder of all Class members impracticable.  Class members are ascertainable from a review of Defendant's business records.

64.     Commonality.  Common questions of law and fact affect the rights of each Class member and common relief by way of damages is sought for Plaintiff and Class members. The harm that Defendant has caused or could cause is substantially uniform with respect to Class members. Common questions of law and fact that affect the Class members include, but are not limited to:

(a)     Whether Defendant breached their contract with Plaintiff and Class members;

(b)     Whether Defendant has been unjustly enriched at the expense of Plaintiff and Class members through its practice of rolling funds from matured CDs into accounts with a *de minimis* and unreasonable interest rate of 0.02%;

(c)     Whether Defendant breached the implied covenant of good faith and fair dealing to Plaintiff and Class members through its matured CD rollover practices;

(d)     Whether Defendant should be enjoined from its practice of rolling funds from matured CDs into accounts with a *de minimis* and unreasonable interest rate of 0.02%;

(e)     Whether Plaintiff and the members of the Class have sustained damages as a result of Defendant's conduct, and if so, the proper measure of such damages.

65.     Typicality. The claims and defenses of Plaintiff are typical of the claims and defenses of the Class because they all had the funds of their matured CDs rolled into accounts with a *de minimis* and unreasonable interest rate of 0.02%. There is nothing peculiar about Plaintiff's claims. Indeed, Plaintiff's claims are typical of the claims of other members of the Class. Plaintiff resides in this jurisdiction and will likely be required to use or will encounter Defendant's banking branches in the future. She is uncertain of her rights and obligations regarding Defendant's banking practices.

66.     Adequacy of Representation. Plaintiff will fairly and adequately assert and protect the interests of the Class.  First, Plaintiff has hired attorneys who are experienced in prosecuting class action claims across the United States, and who will adequately represent the interests of the Class.  Second, Plaintiff has no conflict of interest that will interfere with the maintenance of this class action as her claims are the same as the Class members she seeks to represent. Further, Plaintiff understands her obligations to the Class, is committed to vigorously litigating this matter, and will fairly and adequately protect and represent the interests of the Class.

**Rule 23 (b)(3) Criteria**

67.     The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members. A class action provides a fair and efficient method for the adjudication of this controversy for these reasons and is superior to the alternative methods involved in individual litigation.

68.     Although the Class is numerous enough to meet the numerosity requirement, the proposed Class does not create manageability problems because the claims turn on common legal determinations.  Either Defendant's actions are in violation of Plaintiff's and Class Members' legal or contractual rights, or they are not.  There are no unusual legal or factual issues that would create manageability problems as the issues turn on the propriety of Defendant's transfer of Plaintiff's can Class members' funds upon maturation of CDs they purchased from Defendant.

69.     Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct.

70.     Despite the sizeable sum of money unlawfully retained by Defendant, the claims of the individual Class members are, nevertheless, small in relation to the expenses of individual litigation, making a class action the only procedural method of redress in which Class members can, as a practical matter, recover their damages and stop the illegal practices at issue.

71.     Class members are readily identifiable and ascertainable given the nature of Defendant's business practices.

15

**CAUSES OF ACTION**

**COUNT I**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

72.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1-71 as if fully set forth herein.

73.     Under Florida law there is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement.

74.     Plaintiff and Defendant entered into a contract when Plaintiff invested in then purchased a CD Account, as evidenced by the CD Agreement, which set forth the terms of the parties' relationship.

75.     Under the express and implied terms of the CD Agreements entered into between Defendant and Plaintiff and Class members, Plaintiff and Class members were to benefit by virtue of set rates of interests on funds deposited with Defendant, while Defendant would benefit from holding and maintaining the funds deposited by Plaintiff and Class members.

76.     Plaintiff performed all obligations required of her under the CD Agreement, by funding the CD Account, and complying with all terms thereunder.

77.     Defendant exhibited bad faith by failing to comply with the terms of the CD Agreement and by rolling over Plaintiff's and Class member funds into accounts/investments that earned interest at negligible rate of, a small fraction what they were contractually entitled to, and that earned Defendant greater profits than it would have earned had it complied with the CD Agreement.

78.     By rolling Plaintiff's and Class members' funds into accounts with a *de minimis* and unreasonable interest rate of 0.02% earning a mere fraction of the interest than they expected,

16

bargained for, and could have earned in the open market in order to increase profits for itself, Defendant breached the implied covenant of good faith and fair dealing with respect to both the specific contractual terms in the CD Agreement, and the implied warranties of their contractual relationships with their customers, including Plaintiff and Class members.

79.     By failing to place the funds into an interest-bearing maturity savings account which required periodic statements upon maturity of the CD Account, Defendant unfairly interfered with Plaintiff's right to receive the benefits of the contract.

80.     All conditions precedent to Defendant's performance under the terms of the CD Agreement have occurred.

81.     Plaintiff and Class members were harmed by Defendant's breach of the implied covenant of good faith and fair dealing, in that they earned less money from their investment than they otherwise would have had Defendant not unfairly interfered with their interests.

## COUNT II
### Breach of Contract

82.     Plaintiff repeats and realleges the allegations contained in Paragraphs 1-71 as if fully set forth herein.

83.     In purchasing a CD from Defendant, Plaintiff and Class Members entered into a contract with Defendant, the terms of which were set forth in the CD Agreement.

84.     The CD Agreement required that Defendant transfer any matured funds from the CD Account to an interest-bearing maturity savings account that would have provided additional and or initial notice via periodic statements, that Plaintiff and Class members' previous CDs had matured and that the terms of the account would allowed them immediate access to their funds to invest them more profitably.

17

85.     Defendant breached the contract in that it failed to transfer or roll over funds as required by the CD Agreement, thus resulting in Plaintiff and Class members earning interest on their money at a rate below that which they were entitled to under the contract and below other CD interest rates available at that time.

86.     Defendant breached the contract and federal regulations which required it to provide Plaintiff with the CD Agreement related to the *de minimis* and unreasonably low 0.02% interest rate account that it created and into which it transferred Plaintiff's monies.

87.     Defendant's failure to transfer the money as required by the CD Agreement was the direct and legal cause of Plaintiff's and Class members' injuries and damages.

88.     Defendant's failure to provide Plaintiff and Class Members with the CD Agreement related to the *de minimis* and unreasonably low 0.02% interest rate account it created was another direct and legal cause of Plaintiff's and Class Members' injuries and damages.

89.     Plaintiff and Class members were harmed by Defendant's breach of contract in that they earned less money in interest than they were entitled to under the contract as a result of Defendant's failure to transfer rolled over funds as required by the contract.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests the Court enter judgment in her favor and in favor of the Class, and against Defendant for:

(a)     an order certifying this case to proceed as a class action, designating Plaintiff as the Class representative, and designating his undersigned lawyers as Class Counsel;

(b)     actual damages in an amount according to proof;

(c)     disgorgement of any profits unjustly obtained through the conduct alleged herein;

(e)     an order permanently enjoining Defendant from further engaging in the conduct

alleged herein;

(f)      reasonable attorneys' fees and costs; and

(g)      such further relief as this Court may deem appropriate.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  January 23, 2026                Respectfully submitted,

*/s/ Jeffrey L. Haberman*
Jeffrey L. Haberman, Esq.
**SCHLESINGER LAW OFFICES, P.A.**
1212 SE Third Avenue,
Fort Lauderdale, FL 33316
Telephone: (954) 467-8800
Facsimile: (954) 320-9509
jhaberman@schlesingerlaw.com

*Attorneys for Plaintiffs*

19

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2026, I served a copy of the foregoing on the Clerk of

Court by CM/ECF, which will provide automatic notification to all parties and counsel of record.

By: */s/ Jeffrey L. Haberman*
Jeffrey L. Haberman