**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cv-24482-ALTMAN**

**TUNNY SOLOMON,**

*Plaintiff,*

*v.*

**FLAGSTAR BANK,**

*Defendant.*

_______________________________/

# ORDER ON CLASS CERTIFICATION

Our Plaintiff, Tunny Solomon, has brought this putative class action against the Defendant, Flagstar Bank, N.A. ("Flagstar"), on behalf of herself and "[a]ll natural persons in the United States (a) who purchased a certificate of deposit from [the] Defendant, (b) whose certificate of deposit matured after November 13, 2019, and (c) whose funds were then paid interest by [the] Defendant at the annual rate of 0.02% after [the] Defendant did not send the first account statement." Second Amended Complaint (the "SAC") [ECF No. 84] at 12. The SAC alleges that the "Defendant's unfair and deceptive practice of rolling funds from matured certificates of deposit ('CDs') into accounts with a *de minimis* and unreasonably low interest rate of 0.02% . . . generate[d] interest at a rate far below what the contract required." *Id.* ¶ 1. Having allowed the Plaintiffs' allegations to survive the motion to dismiss[1]—and having permitted the Plaintiff to file a Second Amended Complaint after the close of discovery[2]—we turn now to the Plaintiff's Motion for Class Certification (the "Motion") [ECF No. 116].[3]

[1] *See* Motion to Dismiss [ECF No. 26]; Order Granting in Part Motion to Dismiss [ECF No. 42].
[2] *See* Complaint [ECF No. 1]; Amended Complaint [ECF No. 19]; SAC.
[3] The Motion is fully briefed and ripe for adjudication. *See* Response [ECF No. 125]; Reply [ECF No. 130].

## THE FACTS

The Plaintiff alleges that she and other class members "entered into a Consumer Deposit Account Agreement" ("CD Agreement") [ECF No. 84-1] with the Defendant, SAC ¶ 16, under the terms of which the "Plaintiff deposited the sum of $50,000 into an account on which interest would accrue at the rate of 2.65% annually, provided Plaintiff maintained the required amount of minimum funds deposited in the account," *id.* ¶ 17. The CD Agreement provided that the Plaintiff's account would not "renew[ ] automatically[.]" *Id.* ¶ 20; *see also* CD Agreement at 1 ("Renewal Policy: WILL NOT RENEW"). Instead, the CD Agreement specified that the customer's "deposit will be placed in an interest-bearing Post-Maturity savings account." SAC ¶ 20 (quoting CD Agreement at 3 ("This account will not renew automatically at maturity . . . . If you do not renew the certificate, your deposit will be placed in an interest-bearing Post-Maturity savings account.")).

According to our Plaintiff, however, when her CD Account matured, "despite the terms of the CD Agreement and without any notice to [the] Plaintiff," Flagstar placed "the funds in an account that had a *de minimis* and unreasonably low interest rate of 0.02%."[4] *Id.* ¶ 23; *see also id.* ¶ 24 ("Defendant transferred the funds to an account with a *de minimis* and unreasonably low interest rate of 0.02% that carried a negligible interest rate; from the 2.65% initially contracted for, to a new interest rate of 0.02%, or 0.0075% of the previous rate.").

The Plaintiff now argues that the CD Agreement required Flagstar to roll the Plaintiff's CD Account funds into an interest-bearing savings account. And Flagstar breached that requirement (the Plaintiff says) because the De Minimis Account doesn't qualify as an interest-bearing account. For one thing, the Plaintiff alleges, the De Minimis Account pays a *de minimis* and unreasonably low interest rate of 0.02%. *See id.* ¶ 53 ("[I]n violation of the CD Agreement, [Flagstar] rolled and rolls customer funds from matured CDs, into an account with a *de minimis* and unreasonable interest rate of 0.02%,

[4] We'll refer to this as the "De Minimis Account."

rather than the interest-bearing maturity savings accounts the CD Agreement requires, which earn interest at a significantly higher rate than the account with a *de minimis* and unreasonable interest rate of 0.02% Defendant rolls funds into, and which in turn provides notice by quarterly account statements to those CD account holders and customers of Defendant whose CDs matured."). For another, in the Plaintiff's view, an interest-bearing account would have provided quarterly statements, thus giving the Plaintiff notice of the actual interest rate. *See ibid.* (alleging that an interest-bearing account would "provide[ ] notice by quarterly account statements to those CD account holders . . . whose CDs matured"). In the Plaintiff's view, then, the De Minimis Account cannot be an interest-bearing account because she never received quarterly statements. *See id.* ¶ 36 ("As a result of Defendant's failure to comply with the terms of CD Agreement, which required placing the funds in an interest-bearing maturity savings account, Defendant never rendered quarterly statements which were required by the account agreement for interest-bearing maturity savings accounts."); *id.* ¶ 28 ("Had [Flagstar] complied with the CD Agreement by transferring the funds to an interest-bearing maturity savings account," Flagstar "would have been obligated to send, and [the] Plaintiff would have received, the required quarterly statements, thus apprising her of the non renewal of the CD, and the transfer of the funds therein to an account with a *de minimis* and unreasonably low interest rate of 0.02%.").

In sum, "[b]y rolling [the] Plaintiff's and Class members' funds into account[s] with a *de minimis* and unreasonable interest rate of 0.02% earning a mere fraction of the interest they expected[,] . . . [the] Defendant breached the implied covenant of good faith and fair dealing with respect to both the specific contractual terms in the CD Agreement, and the implied warranties of their contractual relationship with their customers, including the Plaintiff and Class members." *Id.* ¶ 78. And, "[b]y failing to place the funds into an interest-bearing maturity savings account which required periodic

statements upon maturity of the CD Account, [the] Defendant unfairly interfered with [the] Plaintiff's right to receive the benefits of the contract." *Id.* ¶ 79.[5]

In her Motion, however, the Plaintiff alters this theory. She now abandons her claim that the *placement* of the funds into the De Minimis Account breached the CD Agreement and argues, instead, that "Flagstar fails to provide" the De Minimis Account's interest rate on an accompanying Rate Sheet "when a customer purchases a CD—despite promising to do so." Motion at 2; *see also id.* at 3 ("While Flagstar refers customers to a Rate Sheet, the post-maturity interest rate is not included on it."); CD Agreement at 4 ("The interest rate and annual percentage yield ('APY') on your account is disclosed on the accompanying Rate Sheet. At our discretion, we may change the interest rate and APY on your account at any time."). The Plaintiff also argues that "Flagstar does not have policies or procedures to notify CD purchasers what will happen if the money is not redeemed." Motion at 4; *see also ibid.* ("Flagstar's representative, Mr. Benaharon, who testified on the bank's behalf, agreed that the post-maturity rate has, in fact, been determined when the customer receives the maturity notice." (citing Deposition of Mark Benaharon ("Benaharon Dep.") [ECF 114-9] at 51:16–53:21)). In other words, according to the Plaintiff's class-certification motion, Flagstar breached the CD Agreement and its covenant of good faith and fair dealing when it: (1) failed to include the De Minimis Account's interest rate on the Rate Sheet; and (2) failed to notify account holders of the De Minimis Account's interest rate.

---

[5] *See also id.* ¶ 84 ("The CD Agreement required that Defendant transfer any matured funds from the CD Account to an interest-bearing maturity savings account that would have provided additional and or initial notice via periodic statements, that Plaintiff and Class members' previous CDs had matured and that the terms of the account would allowed them immediate access to their funds to invest them more profitably."); *id.* ¶ 85 ("Defendant breached the contract in that it failed to transfer or roll over funds as required by the CD Agreement, thus resulting in [the] Plaintiff and Class members earning interest on their money at a rate below that which they were entitled to under the contract and below other CD interest rates available at that time.").

Relying on a combination of her SAC's allegations and the new theory she advances in her Motion, the Plaintiff asserts claims of breach of the implied covenant of good faith and fair dealing (Count I) and breach of contract (Count II) on behalf of the following class:

> All natural persons in the United States (a) who purchased a certificate of deposit from Defendant, (b) whose certificate of deposit matured after November 13, 2019, and (c) whose funds were then paid interest by Defendant at an annual rate of 0.02% after Defendant did not send the first account statement.

Motion at 2.

## THE LAW

Class actions are governed by Rule 23 of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 23. "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). For a district court to certify a class, the proposed class "must meet each of the requirements specified in Federal Rule of Civil Procedure 23(a)" and "at least one of the requirements set forth in Rule 23(b)." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1250 (11th Cir. 2004) (cleaned up). Plus, "a district court must decide that a class is ascertainable before it may turn to the requirements of Rule 23(a)." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1303 (11th Cir. 2021).

Rule 23(a) "ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Dukes*, 564 U.S. at 349. Under Rule 23(a), a district court may certify a class only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a)(1)–(4). These four requirements—commonly referred to as "numerosity, commonality, typicality, and adequacy of representation"—are "designed to limit class claims to those fairly encompassed by the named plaintiffs' individual claims." *Valley Drug Co. v. Geneva Pharms., Inc.*,

350 F.3d 1181, 1188 (11th Cir. 2003) (citation omitted). A class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

Before the court can certify a proposed class, the plaintiff must also establish that the class satisfies at least one of Rule 23(b)'s three requirements. *See Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012); *see also* FED. R. CIV. P. 23(b)(1)–(3) (outlining three kinds of class actions). Our Plaintiff seeks certification under Rule 23(b)(3), *see* Motion at 13, which allows a district court to certify a class only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," FED. R. CIV. P. 23(b)(3). "Although the trial court should not determine the merits of the plaintiffs' claim at the class certification stage, the trial court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug Co.*, 350 F.3d at 1188 n.15 (citing *Falcon*, 457 U.S. at 160). And so, "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160.

"All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation. A district court that has doubts about whether the requirements of Rule 23 have been met should refuse certification until they have been met." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233–34 (11th Cir. 2016) (cleaned up).

## ANALYSIS

### I. The Plaintiff has inappropriately modified her theory of liability

Flagstar asks us to deny the Motion at the outset because the Plaintiff seeks class certification on a "theory of liability [that] materially differs from what [the] Plaintiff has pled" in her SAC. Response at 13; *see also id.* at 19 ("Plaintiff cannot justify class certification—claiming a 'common

question'—based on a new, unpled legal theory."). Our Plaintiff counters that she's "pleaded two breach-of-contract claims: Despite its promises, Flagstar failed to pay meaningful interest (Count 1) and to disclose the de minimis interest (Count 2)." Reply at 5. "Although," the Plaintiff insists, "the theories of liability or claims remained the same, the details of how Flagstar breached these promises were illuminated through discovery." *Ibid.* As she sees it, then, "Flagstar's change or unpled theory arguments must fail." *Ibid.* We agree with Flagstar. The Plaintiff has used her class-certification motion to amend her theory of liability—long after our amended-pleading deadline expired and *after* we've denied her leave to alter her claims. *See* Motion to Amend [ECF No. 77]; Order Granting in part and Denying in Part Motion to Amend [ECF No. 82]; Paperless Minutes Order [ECF No. 81].

The law is well-settled that a district court has the "discretion . . . to undertake to shape the promotion of the class . . . as it deems proper." *Evans v. U.S. Pipe & Foundry Co.*, 606 F.2d 925, 930–31 (11th Cir. 1983). At the same time, the Eleventh Circuit has cautioned against "judicial rewriting of the plaintiff's pleading." *Vega v. T–Mobile USA Inc.*, 564 F.3d 1256, 1271 (11th Cir. 2009). Courts generally allow a plaintiff to *narrow* her claims at class certification. *See Bouton v. Ocean Properties, Ltd.*, 322 F.R.D. 683, 693 (S.D. Fla. 2017) (Bloom, J.) ("Although a plaintiff may seek to certify a class definition narrower than the one proposed in the operative pleading without a new claim for relief, the converse is not allowed." (collecting cases)). But we typically don't permit plaintiffs to *expand* the class at class certification by, for example, pleading a new cause of action or advancing a theory of liability that encompasses conduct the operative complaint didn't mention. *See Lawrence v. S. Fla. Racing Ass'n, LLC*, 2019 WL 3890314, at *5 (S.D. Fla. June 28, 2019) (Ungaro, J.) ("Because Lawrence cannot expand the scope of the proposed class at the certification stage, and the deadline to amend has passed, the Court concludes that the broader class proposed in the Motion is ill-defined, not manageable, and should not be certified."). Our case falls into the latter category, where a plaintiff has used a motion for class certification to expand her theory of the case.

Contra the Plaintiff's contention that her "theories of liability . . . [have] remained the same," Reply at 5, her new theory that Flagstar breached the CD Agreement by failing to provide the required disclosures appears *nowhere* in the SAC. *Compare* SAC ¶ 84 ("The CD Agreement required that Defendant transfer any matured funds from the CD Account to an interest-bearing maturity savings account that would have provided additional and or initial notice via periodic statements[.]"), *and id.* ¶ 79 ("By failing to place the funds into an interest-bearing maturity savings account which required periodic statements upon maturity of the CD Account, Defendant unfairly interfered with Plaintiff's right to receive the benefits of the contract[.]"), *with* Motion at 2 ("Flagstar promises customers it will continue to pay interest but then fails to disclose the interest rate, concealing that it will be effectively nothing. Flagstar fails to provide this information when a customer purchases a CD – despite promising to do so. . . . Flagstar simply fails to provide any follow-up letter or quarterly banking statements, as it's supposed to and as one would expect."), *and id.* at 3 ("Flagstar purports to send notices a month before the CD term ends. But the bank again fails to tell its customers what the post-maturity rate will be.").

To understand just how much the class-certification motion alters the Plaintiff's theory of liability, we need only focus on the Plaintiff's shifting explanation of *when* the alleged contractual breach occurred. The SAC alleges that the breach occurred *after* the CD expired, when Flagstar placed the Plaintiff's funds into the De Minimis Account. *See* SAC ¶ 78 ("By rolling Plaintiff's and Class members' funds into accounts with a *de minimis* and unreasonable interest rate of 0.02% earning a mere fraction of the interest than they expected, bargained for, and could have earned in the open market in order to increase profits for itself, Defendant breached the implied covenant of good faith and fair dealing with respect to both the specific contractual terms in the CD Agreement, and the implied warranties of their contractual relationships with their customers, including Plaintiff and Class members."); *id.* ¶ 86 ("Defendant breached the contract and federal regulations which required it to

provide Plaintiff with the CD Agreement related to the *de minimis* and unreasonably low 0.02% interest rate account that it created and into which it transferred Plaintiff's monies."); *id.* ¶ 87 ("Defendant's failure to transfer the money as required by the CD Agreement was the direct and legal cause of Plaintiff's and Class members' injuries and damages.").

The Motion, by contrast, claims that the breach occurred long *before* the funds were transferred—when, at contract *formation*, Flagstar failed to disclose the relatively low interest rate the funds would one day earn. *See* Motion at 2 ("Flagstar promises customers it will continue to pay interest but then fails to disclose the interest rate, concealing that it will be effectively nothing. Flagstar fails to provide this information when a customer purchases a CD – despite promising to do so. . . . Flagstar simply fails to provide any follow-up letter or quarterly banking statements, as it's supposed to and as one would expect."); *id.* at 3 ("Flagstar purports to send notices a month before the CD term ends. But the bank again fails to tell its customers what the post-maturity rate will be."); *see also* Reply at 2 (arguing that Flagstar breached the CD Agreement by "failing to disclose to customers the post-maturity rate it paid"). The Motion's theory of liability thus *isn't* a narrower version of the theory she advanced in the SAC—it's a new theory altogether.

For its view that the Plaintiff should be precluded from modifying her theory of liability at the class-certification stage, Flagstar cites *Vega v. T–Mobile USA Inc.*, 564 F.3d 1256, 1271 (11th Cir. 2009), where the operative complaint pled two counts: "Count I, unpaid wages, and Count II, unjust enrichment." *Vega*, 564 F.3d at 1262. At class certification, however, the district court "conducted its Rule 23 analysis as if [the plaintiff] had pled . . . a breach of contract claim"—a claim "that the court had disallowed just two weeks earlier[.]" *Ibid.* Because the district court granted class certification on a *cause of action* the plaintiff hadn't pled—a cause of action the court had not permitted the plaintiff to add—the Eleventh Circuit reversed. "We have," the panel said, "no ready explanation for this display of cognitive dissonance by the district court, and we strongly disapprove of this exercise in judicial

rewriting of the plaintiff's pleading." *Ibid.*[6] Although our Plaintiff hasn't (as the district court in *Vega* had) asserted a new *cause of action* in her class-certification motion, she has advanced a new theory of liability, which likewise effectively amend her complaint in a way our pleading deadline wouldn't have permitted. We therefore find *Vega* at least partly instructive here.

And federal courts around the country routinely deny class certification when the plaintiff tries to amend her theory of liability in her class-certification motion. *See, e.g.*, *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 730 (9th Cir. 2007) (reversing the district court because it "certified this class pursuant to a theory that was neither pled, nor properly considered by the district court when granting class certification"); *Adams v. Am. Fam. Mut. Ins. Co.*, 813 F.3d 1151, 1154 (8th Cir. 2016) ("A theory of [class] liability that is not alleged or even suggested in the complaint would not put a defendant on fair notice and should be dismissed."); *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 101 (2d Cir. 2007) ("The fundamental requirement, in other words, is that the class claims be fairly encompassed within the representative's claims."); *Carter v. L'Oreal USA, Inc.*, 2020 WL 1931270, at *19 (S.D. Ala. Apr. 21, 2020) (Moorer, J.) (denying class certification because the "Plaintiffs' entire Rule 23 analysis is predicated on [ ] allegations" that were "not the claim pleaded in the operative complaint"—and rejecting the "Plaintiffs' attempt to raise a new claim for relief at this late stage in the proceedings"); *Nolen v. Fairshare Vacation Owners Ass'n*, 2021 WL 3036371, at *4 (M.D. Fla. Apr. 9, 2021) (Byron, J.) (warning the plaintiffs that "they may not advance new unpled theories of their case in any Class Certification"); *Bouton*, 322 F.R.D. at 693–94 (S.D. Fla. 2017) ("Plaintiff cannot, as he attempts to do here, *expand* the scope of the proposed class at the certification stage to include entities and theories of liability that are not encompassed within the Second Amended Complaint.").

[6] The Fifth Circuit has come out the same way on this issue. *See Anderson v. U.S. Dep't of Hous. & Urb. Dev.*, 554 F.3d 525, 529 (5th Cir. 2008) ("[W]e hold that the district court abused its discretion by certifying a class based on claims not pleaded in the complaint.").

As Judge Bloom of our Court put it, to allow plaintiffs to amend their theory of liability at class certification "would amount to an eleventh-hour amendment of the pleadings far beyond the . . . deadline to amend that comes well after the close of discovery and on the eve of trial." *Bouton*, 322 F.R.D. at 694. Our Plaintiff's deadline to "file all motions to amend pleading" passed over eighteen months ago (on March 31, 2025). *See* February 11, 2025, Scheduling Order [ECF No. 12]. And we've *already* denied her request to substantively amend her complaint. *See* Motion to Amend; Order Granting in part and Denying in Part Motion to Amend; Paperless Minutes Order. We won't allow this kind of end-run around our orders and deadlines.

In sum, the Plaintiff has twice amended her complaint. *See* Complaint [ECF No. 1]; Amended Complaint [ECF No. 19]; SAC. She may wish she'd amended her theory of liability along the way, but she never did. And a "plaintiff is, after all, the master of his or her suit." *Crowder v. Hous. Auth. of City of Atlanta*, 908 F.2d 843, 849 (11th Cir. 1990). We won't save the Plaintiff from her own pleading choices. *See Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 312 (6th Cir. 2009) ("[T]he plaintiff is the master of the complaint, but that is why he must take responsibility for the allegations included in it."). The Plaintiff may not use her class-certification motion to amend her allegations and advance a new theory of liability that appears nowhere in the SAC.

## II. The Plaintiff fails the Rule 23(b)(3) predominance test

In any event, the Plaintiff fails to satisfy Rule 23(b)(3)'s predominance requirement. The Plaintiff claims that, "without any notice" to her, Flagstar "place[d] funds in an account that had a *de minimis* and unreasonably low interest rate of 0.02%." SAC ¶ 23; *see also* Motion at 1 ("Flagstar places CD funds that are not redeemed into a 'post-maturity savings account' that earns interest at the paltry rate of 0.02%."); *Moreno-Espinosa v. J & J Ag Prods., Inc.*, 247 F.R.D. 686, 687 (S.D. Fla. 2007) (Hurley, J.) (noting that, "in deciding whether to certify the class, the court must generally take as true the allegations in the complaint"). At the motion-to-dismiss stage, our Plaintiff benefited from our

deferential standard of review. *See* Paperless Minutes Order [ECF No. 41]. On a motion for class certification, however, the Plaintiff may no longer rely on a "mere pleading standard" and must "affirmatively demonstrate" that her class-certification request satisfies each element of Rule 23. *Dukes*, 564 U.S at 350; *see also Vega*, 564 F.3d at 1267 (noting that, at the class-certification stage, the plaintiff "bears the burden of establishing every element of Rule 23").

Because our Plaintiff has failed to show that common issues predominate in this case, we'll start (and end) our analysis there. *See Valley Drug Co.*, 350 F.3d at 1188 ("Failure to establish . . . at least one of the alternative requirements of Rule 23(b) precludes class certification."); *Coleman v. Burger King Corp.*, 2025 WL 3280900, at *17 (S.D. Fla. Nov. 25, 2025) (Altman, J.) ("[T]his finding—that the Plaintiffs have failed to satisfy Rule 23(b)(3)—is sufficient for us to deny the Plaintiffs' class-certification request[.]"); *Cotromano v. United Techs. Corp.*, 2018 WL 2047468, at *20 (S.D. Fla. May 2, 2018) (Marra, J.) ("Plaintiffs have not demonstrated how common issues will predominate over these very individual inquiries. Therefore, class certification will be denied for failure to fulfill Rule 23(b)'s predominance requirement.").[7]

Under Rule 23(b)(3), a party may proceed with a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Klay*, 382 F.3d at 1255 (cleaned up). "A proposed class isn't suitable for certification if, 'after adjudication of the classwide issues,

[7] Flagstar contends that the Plaintiff has failed to satisfy *both* Rule 23(a)'s commonality, numerosity, and typicality requirements *and* Rule 23(b)(3)'s predominance and superiority requirements. *See generally* Response. Because we dispose of the Motion under Rule 23(b)'s predominance factor, we needn't reach Flagstar's other arguments.

plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims.'" *Coleman*, 2025 WL 3280900, at *3 (quoting *Klay*, 382 F.3d at 1255). "Under Rule 23(b)(3), plaintiffs also bear the burden of 'establishing that damages are capable of measurement on a classwide basis.'" *Ibid.* (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)). Finally, because Rule 23 "requires a pragmatic assessment of the entire action and all the issues involved," *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009), we may consider whether "unnamed class members' standing poses a powerful problem under Rule 23(b)(3)'s predominance factor," *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1273 (11th Cir. 2019).

### A. Individual Questions of Law Predominate

"When plaintiffs seek certification of a nationwide or multi-state class, they bear the burden of demonstrating that 'variations in state law' don't threaten to 'swamp any common issues and defeat predominance.'" *Coleman*, 2025 WL 3280900, at *4 (quoting *Klay*, 382 F.3d at 1261); *see also Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 (11th Cir. 1987) (affirming the district court's denial of class certification where "differing standards of liability required by the laws of the various states would render class action treatment unmanageable"); *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1180 (11th Cir. 2010) ("Undeniably, it falls to the plaintiff to demonstrate the homogeneity of different states' laws, or at least to show that any variation they contain is manageable.").

When (as here) a plaintiff brings a nationwide class action that implicates the laws of multiple states, "the party seeking certification must provide an *extensive* analysis of state law variations to reveal whether these pose insuperable obstacles." *Sacred Heart*, 601 F.3d at 1180 (emphasis added & cleaned up). And it's our duty to determine "whether the plaintiffs have borne their burden where a class will involve multiple jurisdictions and variations in state law." *Ibid.* (cleaned up); *see also Townhouse Rest. of*

*Oviedo, Inc. v. NuCO2, LLC*, 2020 WL 5440581, at *6 (S.D. Fla. Sept. 9, 2020) (Rosenberg, J.) ("Plaintiffs' failure to show the absence of conflicts among other states' laws is fatal to certifying a nationwide class."). In short, in cases like ours, "where the laws of fewer than all fifty states are at issue, it is clear that more than a perfunctory analysis is required." *Sacred Heart*, 601 F.3d at 1180. The Plaintiff has failed to meet this burden. We'll examine each of her two counts in turn.

### 1. Breach of Contract

In her Motion, the Plaintiff asks us to certify a class that implicates Florida, "Arizona, New Jersey, New York, and Ohio" law. Motion at 16.[8] The Plaintiff says that common questions of law predominate because all these states "require precisely the same elements." *Id.* at 16; *see also ibid.* (noting that "[c]ourts in this district and elsewhere have consistently held that where the basic elements of a breach of contract claim are uniform across the relevant states, choice-of-law variation does not defeat predominance"). To support her argument, the Plaintiff cites only four state-law cases: *Thomas v. Montelucia Villas, LLC*, 302 P.3d 617, 621 (Ariz. 2013); *Zelnick v. Morristown-Beard Sch.*, 137 A.3d 560, 566 (N.J. Super. Ct. Law Div. 2015); *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022); and *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469 (Ohio 2018). *See* Motion at 16. But she notably doesn't *quote* any of these cases to show that each state applies the same legal standard to a breach-of-contract claim. Nor does she provide any analysis beyond her conclusory assertion that these states "require precisely the same elements." *Ibid.*

Flagstar raises three objections to all this. *First*, it correctly observes that the "Plaintiff cites the laws of only five states: Arizona, Florida, New Jersey, New York, and Ohio." Response at 15. And that's a problem, Flagstar maintains, because it "also offered CDs that are subject to the proposed class definition in four other states: California, Indiana, Michigan, and Wisconsin." *Ibid.* "The laws of

[8] The Plaintiff never asks us to certify any sub-classes. Instead, she sues on behalf of a single class whose claims would be governed by all these various states' laws.

all nine states," therefore, "apply to [the] Plaintiff's claims on behalf of the putative class." *Ibid.* The Plaintiff responds to this argument by admitting its omission but insisting that its error "changes nothing because the four additional states—California, Indiana, Michigan, and Wisconsin—likewise imply a covenant of good faith and fair dealing in contracts." Reply at 3.

Two problems with this. *One*, the Reply never mentions the *breach-of-contract* law in those four states, *see generally* Reply, which is reason enough to deny the class-certification motion as to that count, *see Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue [forfeits] it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed [forfeited]."); *Universal Physician Servs., LLC v. Del Zotto*, 842 F. App'x 350, 356 (11th Cir. 2021) ("The defendants [forfeited] this issue by failing to provide any citations to authority or the record in support of their argument."). *Two*, even if the Plaintiff *had* properly addressed the variations (if any) in those four states' breach-of-contract laws in her Reply, we wouldn't consider that argument because arguments raised for the first time in reply "come too late." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 683 (11th Cir. 2014); *see also Sanchez-Llamas v. Oregon*, 548 U.S. 331, 356–57 (2006) ("The consequence of failing to raise a claim for adjudication at the proper time is generally forfeiture of that claim."); *United States v. Coy*, 19 F.3d 629, 632 n.7 (11th Cir. 1994) ("Arguments raised for the first time in a reply brief are not properly before a reviewing court."); *United States v. Alexander*, 170 F.4th 1303, 1315 (11th Cir. 2026) ("The first time he makes the argument properly is in his reply brief, and so he waives the argument altogether."); *United States v. Bain*, 658 F. App'x 493, 495 (11th Cir. 2016) ("Arguments raised for the first time in a party's reply brief are waived.").

*Second*, Flagstar contends that the "Plaintiff's recitation of the elements for her breach-of-contract claim is defective because it omits the element of causation [of damages]." Response at 17. Since the "law of each of the relevant states includes causation as an essential element for this claim,"

Flagstar says that the "Plaintiff will have to prove that not only did she and the putative class members suffer pecuniary loss, but that the alleged breach caused those losses." *Ibid.* Flagstar frames this as an issue of *fact*—*i.e.*, that "the factfinder would have to inquire into and consider evidence on whether [the] Plaintiff and the putative class members reasonably relied on the alleged failure to disclose when deciding (or not deciding) what to do with their post-maturity funds." Response at 21. That seems right. But it's also worth noting that this issue implicates an important variation in state *law*—*viz.*, whether these states require causation of actual damages for a viable breach-of-contract claim in the first instance.[9] And the Plaintiff doesn't even pretend to analyze the various states' contract laws as to this element, saying only in the most conclusory way that, "[u]ltimately, the state law is substantially uniform to certify a class." Reply at 5. That's it. No side-by-side comparison as to what each state requires to satisfy the damages and causation elements, no citations to any of the relevant statutes or the cases interpreting them, no discussion of the various laws' elements, no explanation of how difficult it might be to instruct a future jury on any state-law variations. That's plainly insufficient as a matter of law. *See Sacred Heart*, 601 F.3d at 1180 ("[W]here the laws of fewer than all fifty states are at issue," the plaintiff's burden is to provide "more than a perfunctory analysis."); *Jones v. Depuy Synthes Prods., Inc.*, 330 F.R.D. 298, 314 (N.D. Ala. 2018) (Coogler, J.) ("At the class certification stage, the party seeking certification . . . must . . . provide an extensive analysis of state law variations to reveal

---

[9] Ordinarily, it's true, "individual damage[s] calculations should not scuttle class certification under Rule 23(b)(3)." WILLIAM B. RUBENSTEIN & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS 205 (5th ed. 2011); *see also* Reply at 10 ("[T]he Eleventh Circuit has repeatedly held that individual issues relating to damages do not defeat class certification."); *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) ("[T]he presence of individualized damages issues does not prevent a finding that the common issues in the case predominate."). But, in many states, damages are an *element* of a breach-of-contract claim, not simply a remedy judges can compute after liability has been determined. *See* Response at 24 ("Here, most of the individualized issues go to liability, not just the method by which any damages would have to be calculated."). In other words, to satisfy each state's breach-of-contract law, each individual class member will need to show that Flagstar's breach caused him harm. And the predominance inquiry asks whether "there exists generalized evidence which proves or disproves an *element* on a simultaneous, class-wide basis." *Allapattah Servs.*, 333 F.3d at 1260 (emphasis added).

whether those pose insuperable obstacles." (cleaned up)); *Gelfound v. Metlife Ins. Co. of Conn.*, 313 F.R.D. 674, 677 (S.D. Fla. 2016) (Marra, J.) ("It is not the Court's obligation to survey the laws of 46 states. Plaintiff bears the burden of demonstrating that there is uniformity in the applicable legal standards among the laws of the 46 states at issue."); *ibid.* (considering charts attached to the "motion that compare the laws of all 50 states and the District of Columbia" and finding that "the Plaintiff fail[ed] to meet his burden because his chart does not address the legal standards for an issue that is at the heart of this case"); *Coleman*, 2025 WL 3280900, at *5 ("The Plaintiffs haven't met that burden. Their 'analysis' on this issue, in fact, is just one sentence long. 'A trial on these common laws,' they assert in the most conclusory way, 'will be easily managed and a jury can easily be instructed on the variances in any law.'" (citations omitted)); *Carrera v. UPS Supply Chain Sols. Inc.*, 2012 WL 12860910, at *10 (S.D. Fla. Sept. 21, 2012) (Lenard, J.) (finding that the "[p]laintiffs have failed to meet their burden of showing sufficient uniformity in state law so as to satisfy Rule 23(b)(3)'s predominance and superiority requirements," even though the plaintiffs there had "filed appendices surveying the law of unjust enrichment in forty-nine states plus the District of Columbia").

But there's a bigger problem with the Plaintiff's handling of this second Flagstar argument—and that's the reality that these states' laws *aren't* substantially uniform. Start with Florida and California. "Under Florida law, nominal damages . . . are recoverable upon a finding of breach of contract even though no proof of further damages is made out." *Zim v. W. Publ'g Co.*, 573 F.2d 1318, 1326 (5th Cir. 1978); *see also Walter Int'l Prods., Inc. v. Salinas*, 650 F.3d 1402, 1418 (11th Cir. 2011) ("Florida law does require an award of at least nominal damages if a breach of contract has been established."). In other words, a Florida plaintiff needn't show *actual* harm. That's not the case in California, where "[a]n allegation of actual damage as a result of the alleged contractual breach is a requirement for a *prima facie* breach of contract claim under California law." *Rudgayzer v. Yahoo! Inc.*, 2012 WL 5471149, at *6 (N.D. Cal. Nov. 9, 2012); *see also Aguilera v. Pirelli Armstrong Tire Corp.*, 223

F.3d 1010, 1015 (9th Cir. 2000) ("Under California law, a breach of contract claim requires a showing of *appreciable and actual damage*." (emphasis added)); *Pat. Scaffolding Co. v. William Simpson Constr. Co.*, 256 Cal. App. 2d 506, 511 (1967) ("A breach of contract without damage is not actionable." (cleaned up)). The Plaintiff's failure even to recognize these differences—much less to analyze them—dooms her Motion. *See Klay*, 382 F.3d at 1262 (holding that "the burden of showing uniformity or the existence of only a small number of applicable standards" among multiple states "rests squarely with the plaintiff[ ]").[10]

In short, it "falls to the plaintiff to demonstrate the homogeneity of different states' laws, or at least to show that any variation they contain is manageable." *Sacred Heart*, 601 F.3d at 1180. And "where the laws of fewer than all fifty states are at issue," the Plaintiff *must* provide "more than a perfunctory analysis." *Ibid.* The Plaintiff plainly hasn't met that burden. The Motion and Reply fail to provide the elements of a breach-of-contract claim under the various states' laws, never quote the relevant standard, and don't engage in *any* comparative analysis. *See* Motion at 16. As a result, the Plaintiff has missed at least one critical variation—on the issue of whether a plaintiff must show *actual* damages to prevail on her contract claims. Plus, as we've highlighted, she wholly omits to mention the laws of *four* states whose laws she likewise asks us to apply. *See generally* Motion (failing to mention the

---

[10] We come out the other way on Flagstar's *third* argument. Here, Flagstar contends that the Plaintiff ignored "variations in the relevant states' statutes of limitations[.]" Response at 17. Specifically, it says that "California's statute of limitations for breach of contract, including the implied covenant of good faith, is only four years." *Ibid.* "To determine whether some putative class members' claims are barred by limitations," Flagstar reasons, "an individualized inquiry for each person must determine whether California state law applies to that person's claims and when that person's CD matured." *Ibid.* "Courts consistently hold, however, that the statute of limitations does not bar class certification, even when individual issues are certain to exist." *In re Checking Acct. Overdraft Litig.*, 307 F.R.D. 656, 680 (S.D. Fla. 2015) (King, J.) (collecting cases); *see also Toms v. State Farm Life Ins. Co.*, 2022 WL 5238841, at *9 (M.D. Fla. Sept. 26, 2022) (Barber, J.) ("Courts have widely held that possible differences in the application of a statute of limitations to individual class members, including the named plaintiffs, does not preclude certification of a class action as long as the necessary commonality and, in a 23(b)(3) class action, predominance, are otherwise present." (cleaned up)). We therefore agree with the Plaintiff that "[d]ifferences in the limitations period do not," on their own, "defeat certification." Reply at 4.

laws of California, Indiana, Michigan, and Wisconsin); Reply (omitting any reference to variations in state law for breach of contract). This isn't even a perfunctory analysis—it's no analysis at all. And that's not nearly enough at this stage of the case.

**2. The Implied Covenant of Good Faith and Fair Dealing**

On this claim, the Plaintiff insists that "[a]pplying multi-state law is not an impediment to predominance" because "Florida, like the [sic] most American jurisdictions, implies a covenant of good faith and fair dealing in every contract." Motion at 16 (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999) ("Under Florida law, the implied covenant of good faith and fair dealing is a part of every contract.")). And, the Plaintiff adds, "[t]he other states in which Flagstar operated its CD program recognize and apply the implied covenant on materially identical terms." *Ibid.* (first citing *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 28 (Ariz. 2002) ("Arizona law implies a covenant of good faith and fair dealing in every contract."); then citing *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001) ("A covenant of good faith and fair dealing is implied in every contract in New Jersey."); then citing *Dalton v. Educ. Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995) ("Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance."); and then citing *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469 (Ohio 2018) ("[E]very contract imposes an implied duty of good faith and fair dealing in its performance and enforcement")). Here too, however, the Plaintiff "cites the laws of only five states: Arizona, Florida, New Jersey, New York, and Ohio," even though the Plaintiff's "proposed class definition" *also* implicates the laws of "California, Indiana, Michigan, and Wisconsin." Response at 15; *see also ibid.* ("The laws of all nine states apply to [the] Plaintiff's claims on behalf of the putative class.").

Flagstar maintains that "[m]aterial differences between the laws of these non-Florida states for [the] Plaintiff's claim for breach of the implied covenant of good faith and fair dealing preclude class certification." Response at 16. Specifically, Flagstar points to three "variations in state law": (1)

whether "the implied covenant is an independent cause of action";[11] (2) whether "the breach must occur in connection with an express term in the contract"; and (3) whether the breaching party must have "a specific intent to harm[.]" *Ibid.* In Flagstar's view, "[t]hese variations in state law have practical implications to class certification because [the] Plaintiff cannot satisfy her burden of proving that common legal questions predominate over individualized legal questions regarding what constitute[s] the essential elements of her claim for breach of the implied covenant of good faith and fair dealing." *Id.* at 18. Flagstar thus urges us to "deny certification on this basis." *Ibid.*

The Plaintiff disagrees. "Nuances in state law," she writes in her Reply, "do not undermine the predominance of the common questions" because "[a]ny variation in state law is immaterial." Reply at 3–4. And she insists that "the four additional states—California, Indiana, Michigan, and Wisconsin—likewise imply a covenant of good faith and fair dealing in contracts." Reply at 3. In the alternative, she maintains that, "[e]ven if some states do not recognize a breach of [the] covenant as an independent action . . . *all states* recognize an implied covenant as a gap filler that constrains discretion in fulfilling an express provision of the contract." *Id.* at 4 (emphasis in original); *ibid.* ("The implied covenant does not float free of the contract—it operates precisely on these terms, filling in the requirement that Flagstar exercise its discretion consistently with customers' reasonable expectations under those very provisions."). On intent to harm, the Plaintiff continues, "even if some states require a specific intent to harm, that requirement is satisfied here too" because "Flagstar set the interest rate as low as possible" and "knew its customers were losing money." Reply at 4.

---

[11] On this issue, Flagstar urges us to compare *Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 419–24 (1997) (finding "that the trial court correctly determined that the jury could have reasonably found that Borden breached its obligation to perform its duties in good faith," even though there was no breach of an express contract term), with *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469 (Ohio 2018) ("[T]here is no independent cause of action for breach of the implied duty of good faith and fair dealing[.]"), *and Appalachian Railcar Servs., Inc. v. Boatright Enters., Inc.*, 602 F. Supp. 2d 829, 877 (W.D. Mich. 2008) ("Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing.")).

Yet again, the Plaintiff has failed to "demonstrate the homogeneity of different states' laws, or at least to show that any variation they contain is manageable." *Sacred Heart*, 601 F.3d at 1180. Before we get to that, though, we'd be remiss not to note (again) that, by failing even to mention four states—California, Indiana, Michigan, and Wisconsin—the Plaintiff has forfeited any argument about the uniformity of those states' laws. *See Coy*, 19 F.3d at 632 n.7 ("Arguments raised for the first time in a reply brief are not properly before a reviewing court."); *Alexander*, 170 F.4th at 1315 ("The first time he makes the argument properly is in his reply brief, and so he waives the argument altogether."); *Bain*, 658 F. App'x at 495 ("Arguments raised for the first time in a party's reply brief are waived.").

In any event, as before, the Plaintiff fails to offer any meaningful comparison of the *elements* of each state's laws. The cases she cites (*see* Motion at 16; Reply at 3–4) make clear that some of these states may *recognize* a cause of action for breach of the implied covenant of good faith and fair dealing. But those cases don't outline the elements a plaintiff must prove to state a plausible implied-covenant claim in each state. It goes without saying that the Plaintiff cannot "demonstrate the homogeneity of different states' laws" when she doesn't even tell us *what* each state's law is. *Sacred Heart*, 601 F.3d at 1180. Again, she hasn't "outlined the elements of any state's [ ] cause of action, compared (or contrasted) the differences between the various states' [ ] laws, or explained how we might overcome any such differences in our jury instructions." *Coleman*, 2025 WL 3280900, at *7 (denying class certification because the plaintiffs "failed to carry their burden of demonstrating that common questions of law predominate"). She never tells us *which* states require an intent to harm and offers no case for her view that Flagstar's decision to "set the interest rate as low as possible," Reply at 4, even constitutes bad faith under *any* state's laws. It's simply not our job to meet the Plaintiff's burden for her. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue [forfeits] it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed [forefeited]."); *MY. P.I.I.*

*LLC v. H&R Marine Eng'g, Inc.,* 544 F. Supp. 3d 1334, 1346 (S.D. Fla. 2021) (Altman, J.) (noting that courts aren't required "to do the lawyers' jobs as well as our own"); *Shenzhen Kinwong Elec. Co. v. Kukreja*, 574 F. Supp. 3d 1191, 1233 n.32 (S.D. Fla. 2021) (Altman, J.) (rejecting an argument because the party "provided absolutely no authority for her view on this issue").

All that aside, though, the Plaintiff is *also* wrong on the law. For starters, "Indiana law does *not* impose a generalized duty of good faith and fair dealing on every contract[.]" *Partin v. Baptist Healthcare Sys., Inc.*, 135 F.4th 549, 562 (7th Cir. 2025) (emphasis added & cleaned up). "Instead, 'implied covenants of good faith and fair dealing apply only to insurance and employment contracts or where contracts are ambiguous as to the application of the covenants or expressly impose them.'" *Ibid.* (quoting *Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 918 (Ind. Ct. App. 2011)). Our Plaintiff doesn't even cite this rule and has made no effort to show that her case fits into the neatly circumscribed exceptions it describes. She also misrepresents the state of Arizona law, where "the remedy for breach of this implied covenant is ordinarily by action on the contract" and where a plaintiff can only receive damages where "there is a special relationship between the parties arising from elements of public interest, adhesion, and fiduciary responsibility." *Burkons v. Ticor Title Ins. Co. of Cal.*, 813 P.2d 710, 720 (Ariz. 1991). And the law is well-settled in Arizona that "the relationship between a bank and an ordinary customer" doesn't "give[ ] rise to a fiduciary or special duty under Arizona law." *Hopkins v. BMO Bank NA*, 2024 WL 6987461, at *2 (D. Ariz. Sept. 18, 2024); *see also Greenfield Plaza Invs. LLC v. Stearns Bank N.A.*, 2012 WL 13024089, at *9 (D. Ariz. Aug. 14, 2012) ("Under Arizona case law, the relationship between a bank and an ordinary customer is no more than that of debtor and creditor, and the relationship does not give rise to a fiduciary duty." (cleaned up)). Finally, the Plaintiff misses the mark on New York law. In that state, a claim for breach of the implied covenant of good faith and fair dealing must be *dismissed* as duplicative of a breach-of-contract claim where (as here) "the conduct and resulting injury alleged are identical." *Deutsche Bank Nat'l Trust Co. v. Quicken Loans Inc.*,

810 F.3d 861, 869 (2d Cir. 2015) (citations omitted). The upshot is that we can't square the current state of Arizona, Indiana, and New York law with the Plaintiff's unsupported assertion that "[a]pplying multi-state law is not an impediment to predominance." Motion at 16.

### B. Individual Questions of Fact Predominate

To establish that common questions of fact predominate, a plaintiff must show that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, [ ] predominate over those issues that are subject only to individualized proof." *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000) (cleaned up). Common questions don't predominate if, "as a practical matter, the resolution of an overarching issue breaks down into an unmanageable variety of individual legal and factual issues." *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (citation omitted).

Flagstar offers three arguments for its view that common issues of fact *don't* predominate here. *First*, it contends that the Plaintiff's claims are "premised on the same individualized inquiries and evidence discussed above." Response at 20; *see also ibid.* ("Regardless, to answer this question, the factfinder must inquire into what each uninformed customer would have done with their matured funds had they been informed of the post-maturity rate."). *Second*, it says that the "Plaintiff has not demonstrated that common evidence could—or would—show that every class member suffered an injury-in-fact sufficient for that class member to recover." *Id.* at 24. *Third*, it maintains that "no single methodology for calculating damages exists." *Id.* at 20. We'll address each argument in turn.

#### 1. The Claims aren't Subject to Class-Wide Proof

##### a. Breach of Implied Covenant

As we've explained, there are material variations across the relevant states' laws that prevent us from certifying the Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. *See supra* I.b. We add here only that, even if the Plaintiff *had* shown uniformity across each

state's laws, her class-certification request would still fail because she hasn't shown that common questions of fact predominate.

Under Florida law, a plaintiff "asserting a cause of action for breach of the implied covenant [of good faith and fair dealing] must allege 'a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party.'" *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1329 (11th Cir. 2012) (quoting *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 607 F.3d 742, 747 (11th Cir. 2010) (applying Florida law)); *see also Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097–98 (Fla. Dist. Ct. App. 1999) ("Thus, where the terms of the contract afford a party substantial discretion to promote that party's self-interest, the duty to act in good faith nevertheless limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party."). To clear Rule 23(b)'s predominance hurdle, then, the Plaintiff must show, with class-wide proof, that Flagstar's 0.02% interest rate "disappoint[ed] [the class members'] reasonable expectations." *Resnick*, 693 F.3d at 1329.

As Flagstar correctly observes, however, "there are numerous individualized questions regarding what caused each putative class member to not redeem their CD at maturity"—for example, "what the person knew or did not know concerning the post-maturity interest rate, varying practices within the Bank's branches on contacting customers both before and after maturity, differences in what was or was not communicated to customers over the phone or in person at a branch, and different options the putative class members had for what they would do with the matured funds[.]" Response at 23. All this, Flagstar says, would require us to engage in an individualized analysis about the extent to which the De Minimis Account's interest rate "unfairly frustrat[ed]" each class member's "reasonable expectations." *Resnick*, 693 F.3d at 1329.

The Plaintiff responds that, "without any evidence," Flagstar "tells a story about unicorns—class members who found out the post-maturity rate and did nothing." Reply at 9. "If a reasonable customer somehow learned of the rate," the Plaintiff somehow insists, "the funds would have been withdrawn." *Ibid.* But the Plaintiff has adduced no evidence for this—and it's the Plaintiff, of course, who bears the burden here. *See Vega*, 564 F.3d at 1267 (noting that, at the class-certification stage, the plaintiff "bears the burden of establishing every element of Rule 23"). She, for instance, has no evidence that a rate of 0.02% would have "unfairly frustrate[d]" the class members' "common purpose" for investing their funds. *Resnick*, 693 F.3d at 1329. And she offers no proof to substantiate her view that, "[i]f a reasonable customer somehow learned of the rate, the funds would have been withdrawn[.]" Reply at 9. The Plaintiff "cannot plead or speculate her way to class certification. She must marshal facts showing, by a preponderance of the evidence, that class issues predominate." *Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217, 1222 (9th Cir. 2024); *Vega*, 564 F.3d at 1267 (holding that the "plaintiff still bears the burden of establishing every element of Rule 23"). We won't certify a class on the basis of the Plaintiff's unsupported speculation. *See In re Niaspan Antitrust Litig.*, 67 F.4th 118, 132 (3d Cir. 2023) ("[M]ere speculation is insufficient to determine whether a plaintiff has established the prerequisites" of class certification.); *Townsel v. Univ. of Ala.*, 80 F.R.D. 741, 743 (N.D. Ala. 1978) (Guin, J.) ("Conclusory allegations by the plaintiff are insufficient basis on which to certify a class; there must be proof.").

Plus, in our view, answering this question would require significant individualized proof.[12] For example, we'd have to determine the "common purpose" each class member had in investing in the

---

[12] *See Nat'l Ass'n of Pro. Allstate Agents v. Allstate Ins. Co.*, 2002 WL 34940469, at *6 (M.D. Fla. Apr. 22, 2002) ("Conduct allegedly breaching the implied covenant of good faith and fair dealing must be evaluated on a case-by-case basis."); *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007) ("In determining whether a party has breached the obligation or covenant of good faith and fair dealing, a court must examine not only the express language of the parties' contract, but also any course of performance or course of dealing that may exist between the parties. Thus, whether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily

CD Agreement. *Resnick*, 693 F.3d at 1329 (holding that a plaintiff "asserting a cause of action for breach of the implied covenant [of good faith and fair dealing] must allege a failure or refusal to discharge contractual responsibilities[ ] prompted . . . by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party"). And there are many possible purposes to choose from: flexibility, a safe investment, a liquid asset, higher returns. We'd then need to determine what each individual class member's "reasonable expectations" were. *Ibid.* Finally, we'd get to the question of whether Flagstar's 0.02% interest rate "unfairly frustrate[d]" *that* "agreed common purpose" *or* "disappoint[ed]" that class member's "reasonable expectations." *Ibid.* That's a lot of highly individualized work. And that's probably why, in the Eleventh Circuit, "courts considering class certification of claims for breach of the covenant of good faith and fair dealing have determined evidence of class members' expectations 'is almost certainly unique to each class member such that the addition of each class member would have the effect of substantially increasing the quantity of the required evidence, and individualized issues are likely to predominate class-wide issues for the Good Faith Class.'" *Krukever v. TD Ameritrade, Futures & Forex LLC*, 328 F.R.D. 649, 660–61 (S.D. Fla. 2018) (Altonaga, J.) (quoting *Herman v. Wachovia Bank, N.A.*, 2012 WL 12943047, at *9 (N.D. Ga. Mar. 29, 2012) (Panell, Jr., J.) (cleaned up)); *see also Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 WL 139913, at *9 (S.D. Fla. Jan. 10, 2013) (Middlebrooks, J.) ("[W]hile the Eleventh Circuit has not addressed class certification of a claim for violations of Florida's implied covenant of good faith and fair dealing, the requirement of a fact intensive inquiry in such cases is well established." (cleaned up)); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) (Moreno, J.) ("[C]laims for unjust enrichment and breach of implied covenant

depends upon the facts of the particular case, and is ordinarily a question of fact to be determined by the jury or other finder of fact."); *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 356 (7th Cir. 2015) ("[F]inding a breach of the implied covenant should be a rare and fact-intensive exercise, governed solely by issues of compelling fairness." (cleaned up)).

of good faith and fair dealing require individualized scrutiny incompatible with class treatment." (cleaned up)).

In the end, without class-wide proof that the proposed class members had the same reasonable expectation (or common purpose), the Plaintiff cannot show—with common evidence—that all class members "suffered the same injury." *Dukes*, 564 U.S. at 350.

**b. Breach of Contract**

For similar reasons, the Plaintiff fails to show, with class-wide proof, that she can satisfy the damages prong of her breach-of-contract claim. Recall that the breach-of-contract theory the Plaintiff advances in her Motion is that the CD Agreement "promised to provide customers with the post-maturity interest rate on an accompanying Rate Sheet" and that Flagstar "breached its CD [Agreements] by failing to provide the Rate Sheet disclosures" and by "failing to provide quarterly or yearly notice" of the De Minimis Account's interest rate. Motion at 10. In other words, her claim is that, while the CD Agreements stated that the De Minimis Account's interest rate would be disclosed on the Rate Sheet, the Rate Sheet included no such disclosure—and Flagstar (she says) never provided any subsequent notice. As Flagstar points out, however, "the factfinder would have to inquire into and consider evidence on whether [the] Plaintiff and the putative class members reasonably relied on the alleged failure to disclose when deciding (or not deciding) what to do with their post-maturity funds." Response at 21. In other words, whether each class member kept his or her funds in the De Minimis Account *because of* Flagstar's failure to provide adequate notice of the interest rate is something we'd need to determine on an individualized basis. *See ibid.* ("Simply put, this case does not belong with those Plaintiff cites—where liability could be determined through common questions and where any individualized issues related only to calculating damages. Instead, this case belongs in the category of those where certification was denied because of unavoidable individualized questions of fact and evidence that ultimately determine liability because they go to the heart of essential elements like

causation and the existence of damages[.]"). And the Plaintiff's speculation that "there is only one reason a class member would not withdraw funds from the [De Minimis Account]—namely, they didn't know the post-maturity rate," Reply at 8–9—is woefully insufficient to carry her burden at this stage of the case, *see Gonzalez v. Corning*, 885 F.3d 186, 199 (3d Cir. 2018), *as amended* (Apr. 4, 2018) ("We find no support in Rule 23 or caselaw for class certification on such a speculative basis."); *see also Miles*, 89 F.4th at 1222 ("Importantly, a party cannot plead or speculate her way to class certification. She must marshal facts showing, by a preponderance of the evidence, that class issues predominate.").

* * *

Ultimately, the "burden of proof rests on the party seeking class certification," *Brown*, 817 F.3d at 1233, and the Plaintiff has failed to show that she can prove the elements of her two claims with common evidence.

**2. Standing**

Article III of the U.S. Constitution grants federal courts the "judicial Power" to resolve "Cases" and "Controversies." U.S. CONST. art. III, §§ 1–2. "This case-or-controversy requirement, which has been construed to embody the doctrine of standing, 'confines the federal courts to a properly judicial role.'" *TransUnion LLC v. Ramierez*, 594 U.S. 413, 423 (2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "The requisite elements of Article III standing are well established: A plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 296 (2022). "To satisfy this requirement, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Walters v. Fast AC, LLC*, 60 F.4th 642, 647–48 (11th Cir. 2023) (cleaned up). "An injury is concrete, we have said, if it actually exists—meaning, it is real, and not abstract." *Id.* at 648 (cleaned up). When a plaintiff lacks standing, we lack subject-matter jurisdiction over her case.

*See McGee v. Solic. Gen. of Richmond Cnty.*, 727 F.3d 1322, 1326 (11th Cir. 2013) ("Absent standing, the District Court lacked subject matter jurisdiction."). And "[t]he plaintiff bears the burden of establishing each element" of standing. *Cordoba*, 942 F.3d at 1268 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

"We start from the basic principle that at the class certification stage only the named plaintiffs need have standing." *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 888 (11th Cir. 2023);[13] *see also TransUnion*, 594 U.S. at 431 ("We do not here address the distinct question whether every class member must demonstrate standing *before* a court certifies a class."); *Speerly v. Gen. Motors, LLC*, 143 F.4th 306, 315 (6th Cir. 2025) (en banc) ("The Supreme Court has not decided whether an unnamed class member's lack of standing poses an Article III problem."). But that doesn't mean we can ignore the standing of unnamed class members. "Rule 23(b)(3)'s predominance analysis implicates Article III standing." *Green-Cooper*, 73 F.4th at 891; *see also Cordoba*, 942 F.3d at 1272–73 ("In some cases, whether absent class members can establish standing may be exceedingly relevant to the class certification analysis required by Federal Rule of Civil Procedure 23."); WILLIAM B. RUBENSTEIN & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS § 2:3 (5th ed. 2011) ("Most courts concerned about the standing of absent class members are in fact concerned about whether the class is properly defined . . . . In this sense, the problem of un-injured absent class members is a problem of Rule 23, not of Article III."). "The predominance inquiry is especially important in light of *TransUnion*'s (and *Cordoba*'s) reminder that 'every class member must have Article III standing in order to recover individual damages' because a district court must ultimately weed out plaintiffs who do not have Article III standing before damages are awarded to a class." *Green-Cooper*, 73 F.4th at 891–92 (quoting *TransUnion*,

---

[13] The Plaintiff says that she suffered an injury in fact because she "earned less money in interest than [she was] entitled to under the [CD Agreement] as a result of [the] Defendant's failure to transfer rolled over funds as required[.]" SAC ¶ 89. We agree that this injury is sufficient to confer standing at this stage of the case. *See Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1207 (11th Cir. 2019) ("[E]conomic harm is a quintessential injury in fact.").

594 U.S. at 431); *see also Cordoba*, 942 F.3d at 1264 ("At some point before it may order any form of relief to the putative class members, the court will have to sort out those plaintiffs who were actually injured from those who were not."). "If many or most of the putative class members could not show that they suffered an" injury in fact, "then they would not be able to recover, and that is assuredly a relevant factor that a district court must consider when deciding whether . . . to certify a class." *Cordoba*, 942 F.3d at 1273. "In the predominance analysis, a district court must determine whether 'each plaintiff will likely have to provide some individualized proof that they have standing.'" *Green-Cooper*, 73 F.4th at 892 n.13 (quoting *Cordoba*, 942 F.3d at 1275).

Importantly, "[t]his does not mean the case is nonjusticiable" because the named Plaintiff, Solomon, has standing, and our Circuit requires only that "a named plaintiff have standing" to satisfy Article III at the class-certification stage. *Id.* at 1264. "But the fact that many, perhaps most, members of the class may lack standing is extremely important to the class certification decision" in a case like ours "where the class certification has proceeded under Rule 23(b)(3)," *ibid.*, and it's our job to determine whether "the questions of law or fact common to class members predominate over any questions affecting only individual members," FED. R. CIV. P. 23(b)(3). The Eleventh Circuit has been clear that, where our standing inquiry at the damages phase would "require[ ] an individualized inquiry," *Cordoba*, 942 F.3d at 1264, the "unnamed class members' standing poses a powerful problem under Rule 23(b)(3)'s predominance factor," *id.* at 1273.

With these teachings in mind, we find that Rule 23(b)'s predominance factor weighs against certification because "each plaintiff will likely have to provide some individualized proof that they have standing." *Id.* at 1275. As Flagstar explains, the "Plaintiff has not demonstrated that common evidence could—or would—show that every class member suffered an injury-in-fact sufficient for that class member to recover." Response at 24. The "Plaintiff," Flagstar says, "does not—and cannot—prove damages to each class member based on common evidence. As a result, she cannot

prove that every class member suffered an injury in fact sufficient to satisfy the predominance requirement of Rule 23." *Id.* at 25. The Plaintiff disagrees. In her view:

> Every class member suffered injury-in-fact the moment Flagstar placed their funds into a 0.02% account and failed to disclose the rate: they lost the difference between that rate and what a reasonable customer would have earned on comparable funds. That injury is automatic, structural, and common to all. It does not depend on what any individual knew, remembered, or later chose to do.

Reply at 10.

Here again, though, the Plaintiff merely speculates that customers only left their funds in the De Minimis Account because they weren't told what the real interest rate was. As we've explained, *see supra* II.(a)(i)–(ii), any determination of each class member's damages is necessarily downstream of what that class member *would have* done had he or she known what the true interest rate was. And it's precisely this type of "individualized inquiry" into "unnamed class members' standing" that "poses a powerful problem under Rule 23(b)(3)'s predominance factor." *Cordoba*, 942 F.3d at 1264, 1273;[14] *see*

[14] The Plaintiff could have argued—but didn't—that a breach of contract (which includes breach of implied covenants) is a concrete injury for standing purposes, even without a showing of actual damages. "The law in this domain is, admittedly, somewhat unsettled." *Attias v. CareFirst, Inc.*, 346 F.R.D. 1, 7 (D.D.C. 2024), *motion to certify appeal denied*, 2024 WL 3886643 (D.D.C. Aug. 20, 2024), *and leave to appeal denied sub nom.*, *In re Attias*, 2024 WL 4633243 (D.C. Cir. Oct. 29, 2024). After *TransUnion*, there's no clear consensus among the circuits as to whether a breach of contract between private parties, without actual financial harm, constitutes an injury in fact sufficient to confer standing. *Compare Glennborough Homeowners Ass'n v. United States Postal Serv.*, 21 F.4th 410, 415 (6th Cir. 2021) (noting that "a breach of a contract between two private parties, standing alone, may suffice as an injury for purposes of constitutional standing," but concluding that "[w]e need not resolve these thorny questions today"), *with Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 451 (5th Cir. 2022) ("[T]raditional and recent precedent arising from both the Fifth Circuit and the Supreme Court reflect that a breach of contract is a sufficient injury for standing purposes."), *and Dinerstein v. Google, LLC*, 73 F.4th 502, 519–20 (7th Cir. 2023) ("[A]n alleged breach of contract, without any corresponding actual harm, does not give rise to an Article III case or controversy" because "only a plaintiff who has been *concretely harmed* by the defendant's legal infraction may sue that private defendant over it in federal court." (cleaned up)), *and Perry v. Newsom*, 18 F.4th 622, 632 (9th Cir. 2021) (finding that a breach of contract without actual harm isn't enough to confer Article III standing because "[a]n analogy to a traditionally recognized cause of action does not relieve a complainant of its burden to demonstrate an injury"). While the law in our Circuit was favorable to the Plaintiff before *TransUnion*, we're skeptical that simply alleging a breach of contract, without some concrete harm, would be enough to confer standing today. In any event, again, the Plaintiff never advances this argument—so we needn't delve further into it.

*also Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 861 (11th Cir. 2012) (affirming the denial of a class-certification request where the proposed class "impermissibly include[d] members who have no cause of action"); *Fla. Immigrant Coal. v. Uthmeier*, 780 F. Supp. 3d 1235, 1270 (S.D. Fla. 2025) (Williams, J.) ("Nevertheless, class definitions must not be so broad that many or most of the putative class members will not be able to show that they have Article III standing if it comes time for the Court to grant relief." (citations omitted)); *Clippinger v. State Farm Auto. Ins. Co.*, 173 F.4th 817, 843 (6th Cir. 2026) (Bush, J., concurring) ("And when the vast majority of absent class members lack Article III standing, class certification will be inappropriate.").

**3. Damages**

"Under Rule 23(b)(3), plaintiffs bear the burden of 'establishing that damages are capable of measurement on a classwide basis.'" *Coleman*, 2025 WL 2380900, at *3 (quoting *Comcast Corp.*, 569 U.S. at 35). "The general rule in the Eleventh Circuit is that the 'presence of individualized damages issues does not prevent a finding that the common issues in the case predominate.'" *Ibid.* (quoting *Herrera v. JFK Med. Ctr. Ltd. P'ship*, 648 F. App'x 930, 936 (11th Cir. 2016) (cleaned up)). But this rule is subject to several exceptions. "For example, individual damages defeat predominance if computing them 'will be so complex, fact-specific, and difficult that the burden on the court system would be simply intolerable.' Furthermore, individual damages defeat predominance when they are accompanied by 'significant individualized questions going to liability.'" *Brown*, 817 F.3d at 1240 (quoting *Klay*, 382 F.3d at 1260); *see also Simmons v. Ford Motor Co.*, 592 F. Supp. 3d 1262, 1295 (S.D. Fla. 2022) (Ruiz, J.) ("[A] plaintiff must actually demonstrate, through evidentiary proof, that class-wide damages are capable of measurement, not simply assert that it is so." (cleaned up)). Both exceptions apply here.

Again, the Plaintiff contends that "damages can be calculated reliably on a class-wide basis using a common, transparent methodology applied to Flagstar's own account records." Motion at 15. Specifically, she proposes that the damages can be calculated as "the difference between interest

actually earned at 0.02% and the interest that would have been earned had the class member redeployed the funds into a comparable investment upon learning the post-maturity rate." *Ibid.* We see two problems with this theory. *First*, as we've discussed, the Plaintiff simply assumes, without evidence, that, "[i]f a reasonable customer somehow learned of the rate, the funds would have been withdrawn." Reply at 9. As before, however, the Plaintiff's speculation on this (or any other) point isn't sufficient at this phase of the case. *See Echevarria v. Expedia, Inc.*, 2024 WL 3429106, at *5 (S.D. Fla. July 16, 2024) (Moreno, J.) ("Conclusory statements are insufficient to meet the burden of proof on a motion for class certification."). *Second*, we don't know what the class members "would have earned had they redeployed the funds," Motion at 15, because the Plaintiff never deigns to tell us. But we think it beyond cavil that different class members might have invested their money in different vehicles—some longer term, some shorter, some riskier, some more cautious, some in equities, some in real estate, some in bonds, etc. We therefore cannot begin to compute any class member's damages without a highly individualized inquiry into that class member's expectations, his or her knowledge of the relevant interest rate, and his or her investment preferences.

In the end, the Plaintiff's lack of common, class-wide evidence will make it impossible for the fact-finder to calculate each class member's damages.[15] The resultant individualized damages analysis—when combined with the other individualized issues we've identified—thus prevents us from concluding that the Plaintiff has "establish[ed] that damages are capable of measurement on a classwide basis." *Comcast Corp.*, 569 U.S. at 35.

---

[15] This is especially true given that each CD Agreement covered a *different* time period and offered a *different* interest rate. *See* Response at 8 ("CDs with shorter or longer terms" than the Plaintiff's 14-month CD "were included in the class size number the Bank provided [to the Plaintiff.]"); *see also* Motion at 15 (arguing that "the difference between interest actually earned at 0.02% and the interest that would have been earned had the class member redeployed the funds into a comparable investment upon learning the post-maturity rate" could easily be calculated because "Flagstar maintains detailed records of every CD account, including . . . the interest rate [and] the maturity date"). And, it goes without saying, the expectations an investor might have for a long-term CD Agreement likely differ from the expectations a different class member might have for a shorter-term investment.

***

After a careful review, in sum, we **ORDER and ADJUDGE** that the Plaintiffs' Motion for Class Certification [ECF No. 116] is **DENIED**.

**DONE AND ORDERED** in the Southern District of Florida on October 29, 2026.

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record